1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>THANJAVUR MANAVALAN,<br><br>    Defendant. | CASE NO. 2:23-cr-00192-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE EXPERT TESTIMONY AND RULE 404(B) EVIDENCE |

16    This matter comes before the Court on three pretrial motions filed by Defendant Thanjavur

17 Manavalan seeking to exclude (1) testimony that the charged tax returns are representative of a

18 broader universe of problematic but uncharged returns, Dkt. No. 47; (2) testimony of Revenue

19 Agent Aleksandr Cherkashin, Dkt. No. 52; and (3) evidence under Federal Rule of Evidence

20 404(b), Dkt. No. 53. The Government opposes these three related motions in a combined response,

21 Dkt. No. 59, and Manavalan filed a combined reply, Dkt. No. 61. For the reasons set forth below,

22 the Court grants in part and denies in part the motion to exclude testimony from Agent Cherkashin,

23 the motion to exclude Rule 404(b) evidence, and the motion to exclude testimony that the charged

24 tax returns are representative of a broader universe of problematic but uncharged returns.

# I.    BACKGROUND

In 2019, the Scheme Detection Center ("SDC") of the Internal Revenue Service ("IRS") flagged Manavalan's tax return business—Mano Accounting Services LLC ("MAS")—"for unusual and potentially fraudulent activity because the percentage of tax returns prepared by [Manavalan] that sought refunds exceeded the national average." Dkt. No. 43-1 at 6. SDC also "flagged concerns about the validity of information prepared by [Manavalan] contained in" Schedules C, D, and E "based on comparisons with national averages." *Id.* at 6–7.[1] Inflating those expenses or losses reduced the taxable income of Manavalan's clients, which in turn decreased their tax liability and/or increased the amount of their refund. *Id.* at 7. IRS Special Agent Christopher Schneider investigated and agreed with the initial findings that tax returns prepared by Manavalan showed unreimbursed business expenses and losses under Schedules C, D, and E at rates significantly higher than national averages. *Id.* at 8–11.

In February 2021, an undercover agent contacted MAS to schedule the preparation of his tax return, and was told to send documents to MAS. *Id.* at 11. Manavalan prepared a tax return for the undercover agent that claimed a refund of $1,143 as a result of business deductions and capital losses that, according to the IRS, the undercover agent did not seek or support. *Id.* at 14–15. The IRS determined that a properly prepared return with the same information should have led to the taxpayer owing $2,359. *Id.* at 14. Agent Schneider then obtained warrants "to search Manavalan's residence, the basement of which doubled as the MAS office space; Manavalan's person; and several email accounts used by the business." Dkt. No. 59 at 3 (citing Dkt. No. 43-1). The IRS also

---

[1] Special Agent Schneider describes the relevant schedules as follows: "Schedule C is used to report income or a loss from a business operated by a taxpayer for the purpose of engaging in the activity for income or profit and where the taxpayer is involved in the activity with continuity and regularity"; "Schedule D is used to report gains and losses from the sale of capital assets, such as stocks and bonds"; and "Schedule E is used to report income or loss from rental real estate, royalties, partnerships, S corporations, estates and trusts." *Id.* at 7.

interviewed Manavalan and "dozens of taxpayers for whom Manavalan had prepared a tax year 2018, 2019, and/or 2020 return." *Id.*

In December 2023, Manavalan was indicted on 14 counts of Aiding and Assisting in the Preparation and Presentation of a False and Fraudulent Return in violation of 26 U.S.C. § 7206(2). Dkt. No. 1 at 1–3. The Government alleges that between April 2019 and April 2021, Manavalan aided and assisted 13 taxpayers with filing false and fraudulent returns. *See id.* at 1–2.[2] Specifically, the returns "represented that the taxpayers were entitled under the provisions of the Internal Revenue laws to claim deductions for items and in amounts specified" in the Indictment, even though Manavalan "knew[] the taxpayers were not entitled to claim deductions in the claimed amounts[.]" Dkt. No. 1 at 1–2. The alleged scheme resulted in "reduction of the taxpayer's taxable income and the taxpayer receiving credits for which they were ineligible." *Id.* Trial is scheduled to begin on January 20, 2026. Dkt. No. 36.

On October 31, 2025, the Government made a disclosure regarding Revenue Agent Aleksandr Cherkashin pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) stating that, among other things, he would opine about "the calculation of tax losses for the 14 counts charged in the indictment" as well as for the uncharged returns. Dkt. No. 59-1 at 4–5. The Government stated that it did not believe that Agent Cherkashin's testimony would be expert in nature, but it provided the disclosure "to minimize disputes and in an abundance of caution." *Id.* at 2. The defense requested additional information, *see* Dkt. No. 52-1 at 2, to which the Government responded with a supplemental disclosure, *see generally* Dkt. No. 52-1.

On November 6, 2025, the Government issued a Federal Rule of Evidence 404(b) notice to the defense, noting among other things that the Government will offer evidence that "[t]he

---

[2] Before trial, the Government moved to dismiss counts 13 and 14 related to taxpayer D.Y., and the Court granted that unopposed motion. Dkt. Nos. 67–68.

1    indicted counts are representative in that the larger universe suffers from many of the same defects,

2    such as improperly adjusted capital gains and losses and falsified charitable contributions, business

3    losses, and foreign investment losses." Dkt. No. 47-1 at 2. The Notice also stated that the

4    Government "will offer as evidence data regarding those returns, comparative data for other

5    returns filed during the same period, and testimony about the IRS's response." *Id.* at 3.

6        These motions followed. Dkt. Nos. 47, 52, 53. Trial is scheduled to begin on January 20,

7    2026. Dkt. No. 36.

8                **II.    DISCUSSION**

9        The Court enjoys "wide discretion in determining the admissibility of evidence." *United*

10   *States v. Abel*, 469 U.S. 45, 54 (1984). The Court may amend, renew, or reconsider its rulings in

11   limine in response to developments at trial. *Luce*, 469 U.S. at 41–42.

12       Manavalan asks the Court to exclude any testimony, including but not limited to the

13   anticipated testimony of Agent Schneider, "offered by the government as evidence of knowledge

14   and intent that the tax returns charged in the indictment are 'representative' of a broader universe

15   of returns with similar defects that triggered 'IRS red flags.'" Dkt. No. 47 at 1–3. Manavalan argues

16   that this evidence is expert testimony but does not comport with the requirements of Federal Rules

17   of Evidence 702 and 404. *See generally* Dkt. No. 47. He also moves separately to exclude the

18   anticipated testimony of Agent Cherkashin "concerning his analysis of tax losses from the

19   uncharged counts," Dkt. No. 52 at 1, and all evidence or testimony referenced in the Government's

20   Rule 404(b) notice, Dkt. No. 53 at 1. He further contends that some of the evidence would be

21   unfairly prejudicial under Rule 403. *See generally* Dkt. Nos. 47, 52, 53.

22       The Government responds that only the testimony anticipated from Agent Cherkashin

23   could be construed as expert in nature. Dkt. No. 59 at 5 ("With the exception of RA Cherkashin's

24   calculation of tax losses, all of the challenged testimony will be percipient and requires no

expertise."). The Government also argues that the testimony and evidence about other returns is admissible under Rule 404(b) because it is "is inextricably intertwined with the charged conduct, context on the course of the investigation, or helps show the critical issues of Manavalan's motive, willfulness, and lack of mistake." *Id.*

## A. Agent Schneider's Expected Testimony Is Admissible as Long as He Does Not Rely on Testimonial Hearsay

According to the Government's Rule 404(b) notice, it anticipates that Agent Schneider—and possibly other IRS agents—will testify that "[t]he indicted counts are representative in that the larger universe suffers from many of the same defects, such as improperly adjusted capital gains and losses and falsified charitable contributions, business losses, and foreign investment losses," and that the "anomalies" in Manavalan's tax filings "deviated significantly from national and other averages and from Mr. Manavalan's business in previous years," raising "red flags" and triggering the IRS investigation. Dkt. No. 47-1 at 2–3. Manavalan argues that this testimony is unfounded expert testimony, Dkt. Nos. 47, 61, while the Government responds that it is permissible lay witness testimony, Dkt. No. 59.

### 1. Legal Standard

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that" such testimony (1) "will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "is based on sufficient facts

or data;" (3) "is the product of reliable principles and methods;" and (4) "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d). "[B]efore admitting expert testimony, the district court must perform a 'gatekeeping role' to ensure that the testimony is both 'relevant' and 'reliable.'" *United States v. Valencia-Lopez*, 971 F.3d 891, 897–98 (9th Cir. 2020) (citation modified). "This gatekeeping obligation 'applies to all (not just scientific) expert testimony.'" *Id.* at 898 (quoting *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002)).

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook,* 598 F.3d 558, 565 (9th Cir. 2010). "Relevancy depends on the particular law at issue because '[e]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.'" *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196–97 (9th Cir. 2014) (quoting *Primiano,* 598 F.3d at 565). And whether testimony is helpful within the meaning of Rule 702 is also "in essence a relevancy inquiry." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1184 (9th Cir. 2002).

The reliability inquiry must focus on the basis for the expert's opinion. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995). In other words, the inquiry "focuses not on 'what the experts say,' or their qualifications, 'but what basis they have for saying it.'" *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (quoting *Daubert*, 43 F.3d at 1316). Where the relevant reliability concerns "focus upon personal knowledge or experience," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999), the inquiry may cover "whether the expert's reasoning is adequately explained." *Holguin*, 51 F.4th at 854; *see also* Fed. R. Evid. 702, Advisory Committee's Notes to 2023 amendments (decisions holding "that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. . . . are an incorrect application of Rules 702 and 104(a)").

"[T]he line between lay and expert opinion depends on the basis of the opinion, not its subject matter." *United States v. Barragan*, 871 F.3d 689, 704 (9th Cir. 2017); *see also United States v. Freeman*, 498 F.3d 893, 902 (9th Cir. 2007) (distinguishing between testimony based on "specialized knowledge" and testimony based on "general knowledge of the investigation"). As the Ninth Circuit recently explained,

> [b]efore Rule 701, courts distinguished between admissible fact testimony and inadmissible opinion testimony. *United States v. Gadson*, 763 F.3d 1189, 1206 (9th Cir. 2014) (noting the "then-prevailing evidentiary principles" which limited lay witness testimony to factual observations). Non-expert or "lay" witnesses were typically barred from presenting opinion testimony on the grounds that it "would mislead juries." *Id.* Rule 701 rejected these rationales and liberalized the admission of lay opinion testimony. . . . [A] wide range of lay opinion testimony—including by law enforcement officers in a criminal trial—is admissible under Rule 701.

*United States v. Dorsey*, 122 F.4th 850, 854 (9th Cir. 2024). An agent's accumulation of knowledge through their investigation does not transform investigation-related testimony from lay to expert; "an investigator who has accumulated months or even years of experience with the events, places, and individuals involved in an investigation necessarily draws on that knowledge when testifying[.]" *United States v. Gadson*, 763 F.3d 1189, 1209 (9th Cir. 2014) (noting that "it is those out-of-court experiences that make the witness's testimony helpful to the jury"). Further, an agent can testify as a lay witness "based [on] his interpretations o[f] his personal knowledge of facts he learned during the investigation." *Id.* at 1209–10. Finally, "lay opinion testimony may not convey or rely on hearsay, because it is not helpful to the jury." *Id.* at 1211.

Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In the criminal context, "[t]he term 'unfair prejudice' . . . speaks to the capacity of some concededly

relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

2. Agent Schneider May Testify About Receiving the Statistics and His Investigation as Long as He Does Not Rely on Inadmissible Hearsay

Manavalan contends that "the government's proposed testimony that the tax returns charged in the indictment are representative of a broader universe of returns with similar defects that initially triggered 'red flags' and the IRS investigation, and which tend to prove uncharged counts relevant to Mr. Manavalan's knowledge and intent, constitutes expert testimony under FRE 702" because it relies on "statistical inferences requiring scientific, technical, or other specialized knowledge about representative sampling." Dkt. No. 47 at 3–5; *see also* Dkt. No. 61 at 12 (arguing that Agent Schneider's testimony about red flags and national averages is not helpful to the jury, and "[i]nterpreting tax return patterns, evaluating deviations from national averages, and determining what constitutes a 'red flag' all demand technical expertise in statistical analysis and tax administration"). Manavalan further contends that the testimony is "neither relevant nor reliable" under Federal Rule of Evidence 702, and the Court "should conduct a *Daubert* hearing to determine relevance and reliability before such evidence reaches the jury." Dkt. No. 47 at 1–2.

The Government responds that Agent Schneider's expected testimony regarding the inception of the investigation is not expert in nature. He is expected to testify about why the IRS initiated an investigation of Manavalan: "IRS colleagues surfaced anomalous metrics associated with Manavalan's [preparer tax identification number ("PTIN")]." Dkt. No. 59 at 5. Agent Schneider then "analyzed statistics about Manavalan's tax filings and compared them to Manavalan's historical filings and to national averages. He will testify that those figures raised red flags and—while they did not conclusively prove fraud—warranted further investigation." *Id.* (noting that "the IRS employees who run the numbers are expected to testify" as well). The

Government further notes that "it did not require 'scientific, technical, or other specialized knowledge' to note the metrics' dramatic spikes from the past and divergences from national trends—the red flags. . . . It just required long division." *Id.* at 6 (quoting Fed. R. Evid. 702(a)). The Court agrees with the Government that the statistical anomalies that Agent Schneider and other IRS employees observed that triggered the investigation, and their knowledge of the investigation, is not expert testimony. *See, e.g.*, *Gadson*, 763 F.3d at 1210 (finding that a lay witness "had the requisite personal experience and knowledge of the investigation . . . and did not merely regurgitate the government's theory of the case"). Furthermore, the anticipated simple calculations the agents performed to compare the returns Manavalan prepared to national averages were not based on specialized knowledge or otherwise expert in nature. *See* Fed. R. Evid. 702(a); *United States v. Manzano*, 793 F. App'x 360, 365 (6th Cir. 2019) (district court did not err in admitting FBI special agent's testimony regarding evidence recovered from a search—including "red flag" healthcare fraud indicators—because "[t]he 'indicators of fraud' that [the agent] described were within his personal knowledge and required no specialized knowledge").

Manavalan also argues that the national averages are not representative of his clients; instead, "the 'red flags' relied upon by the IRS to initiate its investigation rest on the unproven and erroneous assumption that Mr. Manavalan's clients are representative of the general taxpayer population." Dkt. No. 47 at 8. He contends that this assumption is false because "[h]is clients are not a random cross-section of taxpayers"; rather, they are "mostly IT professionals/software engineers who emigrated from India." *Id.* However, because Agent Schneider's testimony in this area is not expert in nature, the Government need not prove a reliable methodology under Rule 702. And under Rule 701, the "guiding policy" "is to trust the jury to identify unreliable opinion testimony with the help of the adversary process[.]" *Gadson*, 763 F.3d at 1209; *see also Beck*, 418 F.3d at 1015 (noting that "cross-examination exists to highlight potential weaknesses in lay

opinion testimony").[3] Consequently, Manavalan's disagreement with Agent Schneider's assumption is not a reason to exclude his testimony; Manavalan is free to cross-examine IRS witnesses and present his own evidence about his clients.

The Government argues that how Agent Schneider identified "common characteristics that repeated in the returns, including those that are uncharged," is not expert testimony either. Dkt. No. 59 at 6. The Government anticipates that Agent Schneider will "observe ways in which the [12] charged counts are representative" of other uncharged returns, "relating simple, percipient observations" and not the "'statistical sampling or extrapolation' that the defense posits." *Id.* (quoting Dkt. No. 47 at 5). In this way, he will testify about what he *observed* in both the charged and the uncharged returns and supporting documents during the course of his investigation, but he "will not draw conclusions from the clear commonalities," leaving it to the jury to do so. *Id.* at 6–7; *see also* Dkt. No. 47-1 at 2 (the Government's 404(b) notice stating that it will offer evidence that "[t]he indicted counts are representative in that the larger universe suffers from many of the same defects, such as improperly adjusted capital gains and losses and falsified charitable contributions, business losses, and foreign investment losses"). The Court agrees with the Government that testimony about what Agent Schneider observed in the returns—both charged and uncharged—in the course of the investigation is lay testimony. *See, e.g.*, *United States v. Variste*, 625 F. App'x 458, 459–60 (11th Cir. 2015) (district court did not err in admitting IRS special agent's testimony regarding "several indicators of fraud" she identified when reviewing

---

[3] The Court notes that the anomalies identified by Agent Schneider are quite extreme. For example, while the national average percentage of returns with unreimbursed business expenses in 2016 and 2017 was 11 percent, 77 and 71 percent of returns prepared by Manavalan, respectively, claimed such expenses. Dkt. No. 47-2 at 4. While the national average percentage of returns with Schedule C losses from 2018 to 2020 were four percent, four percent, and three percent, respectively, 30 percent, 46 percent, and 63 percent of returns prepared by Manavalan, respectively, contained such losses. *Id.* at 5. And while the national average percentage of returns with Schedule D losses from 2018 to 2020 were five percent, five percent, and two percent, respectively, 86 percent, 87 percent, and 91 percent of returns prepared by Manavalan, respectively, contained such losses. *Id.* at 5–6.

tax returns; "her testimony was based on her personal review of the tax returns filed under [the defendant's] EFIN"; "her testimony about the fraud indicators helped the jury better understand the significance of the commonalities in the tax returns," and the testimony "was not the type of specialized testimony that needed to be admitted under Rule 702 because it was based on a summary of documents related to the case, the jury could have reviewed the documents itself and noticed the commonalities among the returns filed under [the defendant's] EFIN, and the opinions given by [the agent] related to the summary that she prepared"); *Freeman*, 498 F.3d at 904–05 (finding that lay testimony included the witness's "direct observation . . . and other facts he learned during the investigation"); *United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005) (holding that a lay witness's testimony is rationally based on the witness's perceptions if it is "based upon personal observation and recollection of concrete facts").

Manavalan also argues that "it is entirely unclear how the government's witness would establish the factual predicate of a materially false tax return without violating the evidentiary rule against hearsay and Mr. Manavalan's right to confront and cross-examine witnesses under the U.S. Constitution, Sixth Amendment." Dkt. No. 47 at 9; *see also id.* at 4 (arguing that Agent Schneider's anticipated testimony "is based on hearsay (*e.g.*, the statements of uncharged taxpayers that they did not provide certain information to Mr. Manavalan)[.]"). The Government responds that Agent Schneider "does not need to rely on testimonial hearsay from unavailable witnesses to say so, because commonalities are evident from the tax documents." Dkt. No. 59 at 6. To the extent that Agent Schneider plans to testify about his observations and perceptions rather than based on inadmissible hearsay, the Court does not exclude his lay opinion on these issues. However, the Court agrees with Manavalan that if characterizing the returns (e.g., as false or as sharing certain commonalities) will require the witness to look beyond the returns themselves to what the taxpayers orally told the IRS about their returns, the reliance on such testimonial hearsay would

1  violate the Confrontation Clause. *See, e.g.*, *Crawford v. Washington*, 541 U.S. 36, 68 (2004)

2  (prohibiting the introduction at trial of testimonial hearsay against the defendant unless the witness

3  is unavailable and the defendant had a prior opportunity for cross-examination). In the same vein,

4  to the extent that it is not apparent from the face of the return and related non-hearsay

5  documentation (such as brokerage statements) that the uncharged returns contained "improperly

6  adjusted capital gains and losses and falsified charitable contributions, business losses, and foreign

7  investment losses," Dkt. No. 47-1 at 2, Agent Schneider may not provide testimony to that effect.

8      Manavalan further argues that even if the testimony about other taxpayers is lay in nature,

9  it is "far beyond the scope of the investigation of Mr. Manavalan" and thus "unhelpful" to the

10  jury." Dkt. No. 47 at 5. However, as the Government notes, the testimony is helpful because it

11  explains why the IRS began the investigation, provides context, and "helps show the critical issues

12  of Manavalan's motive, willfulness, and lack of mistake." Dkt. No. 59 at 5–6. The Government

13  notes that at trial, it will have to prove willfulness in addition to the other elements of the crime.

14  Dkt. No. 59 at 4. Proving willfulness "requires proving beyond a reasonable doubt that Manavalan

15  'knew federal tax law imposed a duty on [him],' and 'intentionally and voluntarily violated that

16  duty.'" *Id.* (citing Ninth Circuit Model Criminal Jury Instruction 22.6). The anticipated testimony

17  will thus be helpful to the jury.

18      Finally, Manavalan contends that even if Agent Schneider's anticipated testimony that "the

19  indictment represents only a sample of broader fraudulent conduct" is otherwise admissible, it

20  should be excluded as unfairly prejudicial under Rule 403. Dkt. No. 47 at 9. The Government

21  responds that "[t]he Court can amply protect against any unfair prejudice by issuing Ninth Circuit

22  Model Criminal Jury Instruction 2.10, which directs the jury how it may and may not consider

23  other act evidence." Dkt. No. 59 at 17. The Government has shown that the anticipated testimony

24  about statistical anomalies and red flags—which will not include a conclusion that Manavalan's

conduct was "fraudulent"—is probative of willfulness, lack of mistake, and motive. *Id.* at 1, 5. Moreover, the probative value of the evidence is not substantially outweighed by any prejudicial effect. If warranted, the Court can provide a limiting instruction "designed to prevent the jury from considering the evidence for improper purposes and reduce the prejudicial effect." *United States v. Hanks*, No. 1:23-CR-00130-AKB-1, 2024 WL 3567415, at *3 (D. Idaho July 29, 2024) (citing Ninth Circuit Model Criminal Jury Instruction 2.10).

Accordingly, the Court grants in part and denies in part Manavalan's Motion to Exclude Expert Testimony. Dkt. No. 47. Lay witnesses will be permitted to testify about the statistics that led to the inception and continuation of the investigation and how the investigation was conducted, but they cannot testify that the charged returns were representative of a larger universe of uncharged returns except to the extent that the commonalities can be discerned from the face of the returns and related non-hearsay documents.

**B.    Agent Cherkashin's Testimony Is Admissible as Agreed by the Parties**

Manavalan seeks to exclude testimony from Agent Cherkashin "concerning his analysis of tax losses from the uncharged counts." Dkt. No. 52 at 1. Specifically, Manavalan argues that the following opinion from Agent Cherkashin is inadmissible:

> 4. As I noted in my October disclosure, I may discuss my analysis of tax losses from the uncharged (potential) counts analyzed in the SAR [(Special Agent Report)]. As stated above, I may explain how—based on the information collected in the SAR, including the memoranda of interview with the relevant taxpayers—those tax returns should have been prepared, and I will explain how the returns prepared by Mr. Manavalan differ from correctly prepared returns. To the extent my testimony will cover tax losses from uncharged counts and the analysis contained in the SAR is not my work product, I will supplement my disclosures with that analysis as performed by me. At present, I anticipate my analysis will track the analysis performed in the SAR, as laid out with more specificity in my October disclosure and the attachments thereto.

*Id.* at 2, 4. Manavalan argues that the disputed portion of Agent Cherkashin's testimony is expert in nature, *id.* at 3–4, and the Government concedes that the following is an "expert issue": "RA

Cherkashin's testimony regarding his calculation of the tax losses caused by Manavalan's uncharged conduct," Dkt. No. 59 at 7.

Manavalan further contends that Agent Cherkashin's "opinion about tax loss from the uncharged counts is based on the testimonial hearsay of taxpayers and must, therefore, be excluded" under the Constitution's Confrontation Clause. Dkt. No. 52 at 1–2; *see also id.* at 5–6 (same).[4] The Government responds that "[t]o avoid the Confrontation Clause concerns motivating the defense's motion, RA Cherkashin will not calculate tax losses from returns where the relevant taxpayer will not testify." Dkt. No. 59 at 7 (citing *Smith v. Arizona*, 602 U.S. 779 (2024)). Instead, Agent Cherkashin will calculate losses regarding uncharged returns prepared for (1) the undercover agent, who will testify, and (2) "taxpayers who have one or more indicted tax returns . . . and have other, unindicted returns prepared by Manavalan and analyzed in the SAR," who will also testify. *Id.* at 7–8. The Government contends that there is no Confrontation Clause issue because these witnesses will testify and be available for cross-examination. *Id.* at 8. In his reply brief, Manavalan acknowledges that the Government's concession resolves the Confrontation Clause issue. Dkt. No. 61 at 2. Therefore, this motion has evolved into a stipulated motion in limine in part: the parties agree that Agent Cherkashin will not calculate tax losses from returns where the relevant taxpayer will not testify. The Court grants this portion of the motion.

However, the Court does not grant Manavalan's request to exclude Agent Cherkashin's testimony about *all* uncharged counts. Dkt. No. 52 at 1. If the witnesses testify, there is no Confrontation Clause concern. In addition, Agent Cherkashin's expected testimony regarding "how the returns prepared by Mr. Manavalan differ from correctly prepared returns," Dkt. No. 52-1 at 4, is probative of willfulness, lack of mistake, and motive. In addition, as the Government

---

[4] The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

notes, Agent Cherkashin's testimony that when taxpayer's report more losses, they pay less in taxes, which in turn can lead to client retention, is relevant to the issue of motive. Dkt. No. 59 at 15. As the Government further argues, this testimony is also relevant because Manavalan was paid on a per-tax-return basis; his alleged scheme "did not involve the more overt motive of charging taxpayers a percentage of the return they received." *Id.*

As the Court explained during the *Daubert* hearing, *see* Dkt. No. 65, the Court finds that based on Agent Cherkashin's testimony and disclosures, the Government has "demonstrated to the court that it is more likely than not" that Agent Cherkashin's testimony is relevant and reliable because it will help the trier of fact and it is "based on sufficient facts or data," "is the product of reliable principles and methods," and the witness "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Moreover, the probative value of the evidence is not substantially outweighed by any prejudicial effect, and as set forth above, if warranted, the Court can provide a limiting instruction consistent with Ninth Circuit Model Criminal Jury Instruction 2.10. Accordingly, the Court grants in part and denies in part Manavalan's motion to exclude Agent Cherkashin's testimony. Dkt. No. 52.

## C.    Most of the Evidence Is Not Improper Under Rule 404(b) or Rule 403

Manavalan moves to exclude all evidence and testimony referenced in the Government's Rule 404(b) notice, including:

> (i) broad "business background" evidence, (ii) evidence of other uncharged tax returns that Mr. Manavalan filed, which the government alleges contain false material statements based on testimonial hearsay and a statistical analysis performed by the IRS Scheme Development Center, (iii) evidence of structuring, depositing client checks to cash, and underreporting of income, (iv) "undercover agent" evidence.

Dkt. No. 53 at 5; *see also id.* at 1–2 (seeking to exclude "(1) uncharged conduct, including other instances of purported false tax preparation, (2) Mr. Manavalan's tax reporting with respect to his

business or personal taxes, (3) instances when Mr. Manavalan negotiated client checks for money orders and purportedly structured deposits, (4) the alleged underreporting of income received by Mr. Manavalan's tax preparation business," and (5) "the preparation of a tax return for an undercover IRS agent"). Manavalan argues that the Government's "overarching point" in presenting the statistical evidence, the testimony of the undercover agent, and the business practices is to "show that Mr. Manavalan was motivated by greed, instead of innocent mistake or reliance on information supplied by others," and evidence of "greed" is impermissible character trait evidence precluded by Rule 404. Dkt. No. 61 at 3–4. Manavalan also argues that the evidence about business background, "other acts," and the undercover agent's return is unduly prejudicial under Rule 403. Dkt. No. 53 at 6, 11.

The Government responds that it will have to prove willfulness at trial, and it anticipates that Manavalan will attempt to blame the taxpayers or argue that he made innocent mistakes. Dkt. No. 59 at 4. It further contends that the testimony and evidence about other returns is admissible under Rule 404(b) because it is "is inextricably intertwined with the charged conduct, context on the course of the investigation, or helps show the critical issues of Manavalan's motive, willfulness, and lack of mistake." *Id.* at 5 ("The defense should not be permitted to artificially strip the evidence of context and then contend at trial that the charged counts were isolated and innocent errors."). The Government further argues that it "should be permitted to contextualize the [twelve] charged counts through evidence of MAS business practices, statistics as compared to national averages, and evidence about certain uncharged tax returns, including the undercover's return, and the resulting tax losses." *Id.* at 9.

1. Legal Standard

Federal Rule of Evidence 404(b)(1) generally prohibits "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the

person acted in accordance with the character." Evidence of another crime, wrong, or act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). However, the prosecutor must—in writing prior to trial—"provide reasonable notice for any [other crimes, wrongs, or act] evidence that the prosecutor intends to offer" and must "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." *Id.* 404(b)(3). The Government provided the requisite notice here. Dkt. No. 47-1 (Rule 404(b) notice).

The Ninth Circuit uses a four-part test to determine the admissibility of evidence pursuant to Rule 404(b):

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.

*United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (citation omitted). "The government has the burden of proving that the evidence meets all of the above requirements." *Id.* (citation modified). "If the evidence meets this test under Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." *Id.* (citation omitted).

"[E]vidence should not be considered 'other crimes' or 'other act' evidence within the meaning of Rule 404(b) if the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined." *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012) (citation modified). There are two categories of evidence that may be "inextricably intertwined" with the charged conduct and "thus exempted from the requirements of Rule 404(b)." *Id.* "First, other act evidence may constitute a part of the transaction that serves as the basis for the

criminal charge," and second, "admission of other act evidence may be necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id.* (citation modified).

2. <u>Business Background Evidence</u>

Manavalan does not specifically identify the evidence he seeks to exclude in this category, but it seems to be related to the Government's statement that it will offer evidence that "Manavalan held himself out as a tax preparer, attended relevant trainings and received relevant certifications, assisted with the preparation and filing of hundreds of returns every year (increasing substantially during the period at issue), used commercial tax preparation software, and made hundreds of thousands of dollars from the business." Dkt. No. 47-1 at 2. Manavalan argues that "the government's broad business background evidence is irrelevant under FRE 401, constitutes improper propensity proof under FRE 404(b), and risks unfair prejudice under FRE 403." Dkt. No. 53 at 6. He argues that the background information about Manavalan's business is irrelevant and "invites propensity reasoning (successful, high-volume preparer therefore more likely to have acted wrongfully)[.]" *Id.* at 6–7.

The Government responds that evidence about "MAS's pay structure and the tax certifications Manavalan has received, isn't an 'act' at all." Dkt. No. 59 at 15. The Court agrees with the Government that these facts are not "crime[s], wrong[s], or act[s]" prohibited under Rule 404(b).

Next, the Government argues that "[e]vidence that Manavalan held himself out as a tax preparer, attended trainings and received certifications, prepared hundreds of returns every year, and used commercial tax preparation software, all bolsters his intent and undermines potential innocent explanations." Dkt. No. 59 at 16. The Court again agrees with the Government that these acts are relevant and admissible to prove Manavalan's alleged intent and "absence of mistake."

1   *See* Fed. R. Evid. 404(b)(2). In addition, Manavalan does not dispute that he engaged in these

2   actions or that they were close in time to the charged conduct. *See Bailey*, 696 F.3d at 799 (setting

3   forth Rule 404(b) factors).

4        The Government also argues that "[e]vidence that Manavalan made hundreds of thousands

5   of dollars from the business and that it was a volume business charging a few hundred dollars per

6   individual tax return evinces Manavalan's motive for minimizing—in this case by falsifying—his

7   clients' tax obligations." Dkt. No. 59 at 16. The Government notes that in a civil case, *Manavalan*

8   *v. IRS*, No. C24-1829JLR, Dkt. No. 23 at 1–2, Manavalan stated in February 2025 that "[m]ore

9   than 90% of [MAS's] business revenue comes from its tax preparation services" and estimated

10  that $271,150 was 45% of MAS's income in tax year 2023. Dkt. No. 59 at 16. At this point, the

11  Government has not demonstrated the relevance of MAS's income from tax year 2023 when

12  Manavalan was indicted for conduct that occurred between April 2019 and April 2021. Dkt. No.

13  1 at 1–2. However, evidence of Manavalan's income from tax preparation and his business volume

14  for the charged years—and the "two tax seasons earlier for context and comparison," Dkt. No. 59

15  at 11[5]—is relevant and admissible regarding Manavalan's motive to minimize his clients' tax

16  obligations—and thereby encourage repeat customers to his own financial benefit—and such

17  evidence is thus not precluded as propensity evidence under Rule 404(b).

18       Manavalan also contends that the business background evidence "risks unfair prejudice

19  under FRE 403," but does not elaborate on this point. Dkt. No. 53 at 6. Assuming that Manavalan

20  means that the evidence is unfairly prejudicial as propensity evidence, the Court disagrees for the

21  same reason it rejects Manavalan's Rule 404(b) argument.

22

23  ---

    [5] The Government's disclosure is not clear about the time period for which it seeks to present the number of returns
    Manavalan filed and his income derived from his tax filing business. *See* Dkt. No. 47-1 at 2. The Court may revisit
24  the relevant time period for this evidence if the Government seeks to admit evidence from a larger period of time and
    the parties are unable to agree.

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE EXPERT TESTIMONY
AND RULE 404(B) EVIDENCE - 19

1      3.   Uncharged Returns and Statistics

2      Manavalan argues that the uncharged instances of alleged false tax preparation are hearsay

3  and admitting them would violate his rights under the Confrontation Clause. Dkt. No. 53 at 7. In

4  support, he contends that "the taxpayer statements *must* be conveyed to the jury for an evidentiary

5  basis to exist that the uncharged tax returns are sufficiently similar, *i.e.*, false or fabricated, to the

6  charged offenses," and the Government cannot circumvent that requirement with expert testimony

7  about statistical anomalies. *Id.* at 7–8. He also contends that the taxpayer statements about the

8  truthfulness of their returns are improper testimonial hearsay, and he will have no opportunity to

9  cross-examine the taxpayers about their out of court statements. *Id.* at 8–9. As set forth above, the

10 Court will not permit Agent Schneider (and other Government witnesses) from characterizing

11 returns in a manner that relies on inadmissible hearsay, and Agent Cherkashin "will not calculate

12 tax losses from returns where the relevant taxpayer will not testify." Dkt. No. 59 at 7 Accordingly,

13 there is no Confrontation Clause or hearsay issue with that testimony.

14     Manavalan also notes that in *United States v. Sanchez*, 655 F. Supp. 3d 1062, 1072 (D.

15 Idaho 2023), the court excluded expert testimony by an IRS witness that tax return was "false or

16 fraudulent," Dkt. No. 53 at 8, but he does not identify any Government witness who will offer that

17 opinion. Although Agent Cherkashin will be permitted to testify that other returns—of taxpayers

18 who testify—were inaccurate, as set forth above, the Court will not permit Agent Schneider or

19 other lay witnesses to do so to the extent that such falsity or fraud is not apparent from the face of

20 admissible evidence.

21     However, as detailed above, the Court will not exclude testimony and evidence that

22 statistical anomalies triggered the investigation or the nature of those anomalies. Manavalan argues

23 that the statistical anomalies the Government seeks to present "do not generate a reasonable

24 inference of a false or fabricated return prepared by Mr. Manavalan" because "[t]here is no

showing that Mr. Manavalan's population of taxpayers is representative of the IRS universe of taxpayers." Dkt. No. 53 at 8. The Government responds that the statistical evidence it plans to introduce is admissible and not precluded by Rule 404(b) because "[c]omparing Manavalan's tax returns filed during the scheme to his prior trends and national averages demonstrates his motive and intent." Dkt. No. 59 at 10. It also argues that the evidence meets all parts of the Ninth Circuit's test for admissibility under Rule 404(b): "It covers the same time period as the charged conduct, plus two tax seasons earlier for context and comparison. And it is identical to the charged conduct, as all fourteen counts involve falsifications to Schedule C, Schedule D, or both." *Id.* at 11. The Government also notes that other courts have admitted similar statistical evidence. *Id.* at 12 (citing *United States v. Pastars*, CR17-224RSM, Dkt. 42 at 21–22 (W.D. Wash. Feb. 22, 2019); *United States v. Morrison*, 833 F.3d 491, 500 (5th Cir. 2016); and *United States v. Goosby*, 523 F.3d 632, 635 (6th Cir. 2008)). The Court agrees with the Government that the statistical evidence is relevant for context and to show disproportionately high deductions. *See, e.g.*, *Pastars*, CR17-224RSM, Dkt. 42 at 21–22 (permitting the Government to introduce evidence of other tax returns for context and to show "disproportionately high deductions" but not allowing the Government to argue that the uncharged returns were "fraudulent"). And as stated above, Manavalan can explore his contention that the national averages are not representative of client base through cross examination. *See, e.g.*, *Morrison*, 833 F.3d at 500 (explaining that the defendant could raise on cross examination the "socioeconomic status" of her tax preparation clientele as compared to the statistical evidence).

Finally, the Government argues that evidence regarding uncharged counts "shows Manavalan's motive, intent, and plan, and it undermines the notion that the falsifications resulted from a mistake or accident." Dkt. No. 59 at 15. The Government notes that "[e]vidence about uncharged tax returns is regularly admitted under Rule 404(b), and consistent with Rule 403, in

1   trials for violations of 18 U.S.C. § 7206(2) by tax preparers," and such evidence about the returns

2   that Manavalan prepared for other clients and the undercover agent is admissible. *Id.* at 12–13.

3   The Court agrees that evidence regarding uncharged returns is relevant for the purposes identified

4   by the Government and does not violate Rule 404(b). *See, e.g.*, *United States v. Ali*, 616 F.3d 745,

5   753 (8th Cir. 2010) (admitting evidence of other tax returns prepared by the defendant to show

6   willfulness); *United States v. Scott*, 668 F. App'x 609, 610 (5th Cir. 2016) (same); *United States v.*

7   *Toto-Ngosso*, 407 F. App'x 687, 690 (4th Cir. 2011) (explaining that "[e]vidence that [the

8   defendant] had prepared several additional returns containing false deductions and adjustments

9   was highly probative on the issue of whether his preparation of the false returns charged in the

10  indictment was done knowingly or without mistake" and willfully); *United States v. Mitts*, 396 F.

11  App'x 296, 300–01 (6th Cir. 2010) (affirming the admission of evidence of other uncharged returns

12  to show "intent, plan, knowledge, or absence of mistake or accident"). Accordingly, the Court

13  denies Manavalan's request to exclude testimony regarding the uncharged returns and statistics,

14  so long as such testimony does not rely on testimonial hearsay.

15          4.  <u>Personal and Business Taxes and Business Practices</u>

16          Manavalan argues that "[t]he 'other act' evidence of instances related to [his] business or

17  personal taxes, the negotiating of client checks for money orders, and alleged underreporting of

18  income constitute improper propensity evidence." Dkt. No. 53 at 9. He argues that the other

19  conduct is not relevant, and even if it were, "there is an insufficient connection, for FRE 404(b)

20  purposes, between these acts and the knowledge and intent involved with the crime charged of

21  assisting a taxpayer file a false tax return." *Id.* at 10–11; *see also* Dkt. No. 61 at 4 (arguing that the

22  Government's evidence in this area "is a thinly veiled attempt to use FRE 404(b) for general

23  propensity evidence of 'greed'"). And finally, he argues that because of that poor fit, the evidence

24  would be unfairly prejudicial under Rule 403. Dkt. No. 53 at 11.

The Government responds that it "intends to present evidence that [Manavalan] underreported his own income and structured deposits to avoid bank reporting requirements that might have revealed that underreporting." Dkt. No. 59 at 16 (citing Dkt. No. 53-1 at 2). It contends that "[e]vidence showing Manavalan personally evaded tax obligations and structured deposits to avoid reporting requirements shows intent" and knowledge of tax obligations. *Id.*

Here, the Government has made an insufficient showing on the *Bailey* factors. *See* 696 F.3d at 799. Even if the tax underreporting and deposit structuring demonstrates knowledge of certain tax obligations, it does not show knowledge of the obligations at issue in the charged offenses. As Manavalan notes, "the government's allegations regarding [his] underreporting of income on his personal return are unlike the methods the government claims he used with taxpayers." Dkt. No. 61 at 4. The Government also fails to show that the underreporting and deposit structuring is close in time or sufficiently similar to the charged offenses. *See Bailey*, 696 F.3d at 799. Nor does it show that these issues were inextricably intertwined with a charged offense. This other act evidence does not "constitute a part of the transaction that serves as the basis for the criminal charge," nor is it "admission of other act evidence . . . necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Dorsey*, 677 F.3d at 951 (citation modified).[6]

The Court thus excludes under Rule 404(b) evidence about Manavalan's own personal and business taxes and deposit structuring to avoid reporting requirements.

---

[6] The Government argues generally that "all of the challenged evidence is inextricably intertwined with the charged conduct," Dkt. No. 59 at 5; *id.* at 8–9, but it does not specifically contend or explain how Manavalan's personal and business taxes are so inextricably intertwined, *id.* at 16–17.

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE EXPERT TESTIMONY AND RULE 404(B) EVIDENCE - 23

5. Tax Return for the Undercover Agent

Manavalan argues that the Court should exclude evidence of his tax preparation for the undercover agent because Manavalan did not speak with the agent "until weeks after the return was prepared" and generally, "there is an insufficient showing of similarity between the preparation of the mock tax return and the charged offenses to generate a logical inference of knowledge or intent by Mr. Manavalan to commit the charged offenses." Dkt. No. 53 at 11–12.

The Government responds that "the defense concedes" that evidence like the undercover agent's return "is 'consistently' admitted in cases like this one," Dkt. No. 59 at 13 (quoting Dkt. No. 53 at 11), and "it is 'hard to imagine a more clear-cut example of appropriate Rule 404(b) evidence,'" *id.* (quoting *United States v. Campbell*, 142 F. Supp. 3d 298, 301 (E.D.N.Y. 2015). The Government notes that the tax return that Manavalan prepared for the undercover agent contained similar issues as those in the charged offenses, "including altogether unwarranted Schedules C and D, yielding an undeserved taxpayer windfall" to the agent. *Id.* at 3. Manavalan also prepared that return in February 2021, while the IRS was investigating his conduct, *id.*, and the return tends to prove a material point about Manavalan's motive, intent, knowledge, and absence of mistake, Rule 404(b)(2). *See United States v. Cadet*, 664 F.3d 27, 33 (2d Cir. 2011) ("Although [the defendant]'s interaction with [the undercover agent] was not *identical* to the interactions that the taxpayer-clients described in their testimony," the defendant's "preparation of a false return for [the undercover agent] was 'sufficiently similar' to the charged conduct to be relevant to—and indeed 'highly probative of'—knowledge and intent."). Here, as in *Cadet*, "[e]vidence that [Manavalan] knowingly and intentionally prepared a false tax return for [the undercover agent] by inserting inflated deductions . . . provided a reasonable basis to infer that the inflated deductions" in the indicted charges "were likewise entered knowingly and intentionally."

*See id.* Furthermore, there is no Confrontation Clause issue here because the undercover agent will testify. Dkt. No. 59 at 13.

Manavalan also argues that even if there is any inference of knowledge or intent raised by his preparation of the undercover agent's tax return, that inference "is substantially outweighed under FRE 403 by the danger of unfair prejudice." Dkt. No. 53 at 12. Manavalan does not elaborate on that point, *see id.*, and under the doctrine of party presentation, the Court will not invent arguments for him, *see United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020)*; Todd R. v. Premera Blue Cross Blue Shield of Alaska*, 825 F. App'x 440, 442 (9th Cir. 2020); *see also Clark v. Sweeney*, No. 25-52, 2025 WL 3260170, at *1 (U.S. Nov. 24, 2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Manavalan has not shown that this evidence is unduly prejudicial, and as set forth above, a limiting instruction can protect against improper consideration.

Finally, Manavalan requests that in the alternative to exclusion, the Court should "require the government to prepare a detailed proffer, witness-by-witness and exhibit-by-exhibit, specifying the precise non-propensity purpose, the element to which each item relates, and the chain of logical relevance without forbidden inferences" and give a limiting instruction to the jury. Dkt. No. 53 at 13. Manavalan has not cited any source requiring such a disclosure. As for the requested instruction, the parties can propose appropriate instructions in accordance with the case schedule. Dkt. No. 38.

## III.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Manavalan's motion to exclude testimony that the charged tax returns are representative of a

broader universe of problematic but uncharged returns, Dkt. No. 47, his motion to exclude testimony from Agent Cherkashin, Dkt. No. 52, and his motion to exclude evidence under Federal Rule of Evidence 404(b), Dkt. No. 53.

Dated this 22nd day of December, 2025.

Lauren King
United States District Judge