1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br>    v.<br><br>THANJAVUR MANAVALAN,<br><br>                 Defendant. | CASE NO. 2:23-cr-00192-LK<br><br>ORDER DENYING MOTION TO SUPPRESS THE RESULTS OF SEARCH WARRANTS |

16

17

18

19

20

      This matter comes before the Court on a pretrial motion filed by Defendant Thanjavur Manavalan seeking to suppress the fruits of four search and seizure warrants issued on June 3, 2021, authorizing searches of his home/home office, his person, and his email accounts. Dkt. No. 43. The Government opposes the motion. Dkt. No. 60. For the reasons set forth below, the Court denies the motion.[1]

21

22

23

24

---

[1] The Court finds it appropriate to resolve this motion without an evidentiary hearing. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.").

ORDER DENYING MOTION TO SUPPRESS THE RESULTS OF SEARCH WARRANTS - 1

## I.    BACKGROUND

**A.    The IRS Investigated and Obtained Warrants**

In 2019, the Scheme Detection Center ("SDC") of the Internal Revenue Service ("IRS") flagged Manavalan's tax return business—Mano Accounting Services LLC ("MAS")—"for unusual and potentially fraudulent activity because the percentage of tax returns prepared by [Manavalan] that sought refunds exceeded the national average." Dkt. No. 43-1 at 6. SDC also "flagged concerns about the validity of information prepared by [Manavalan] contained in" Schedules C, D, and E "based on comparisons with national averages." *Id.* at 6–7. Inflating those expenses or losses reduced the taxable income of Manavalan's clients, which in turn decreased their tax liability and/or increased the amount of their refund. *Id.* at 7. IRS Special Agent Christopher Schneider investigated and confirmed based on his independent calculations that tax returns prepared by Manavalan showed unreimbursed business expenses and losses under Schedules C, D, and E significantly more often than national averages. *Id.* at 8–11.

In February 2021, an undercover agent contacted MAS to schedule the preparation of his tax return, and was told to send relevant documents to MAS. *Id.* at 11. Manavalan prepared a tax return for the undercover agent that claimed a refund of $1,143 as a result of business deductions and capital losses that, according to the IRS, the undercover agent did not seek or support. *Id.* at 14–15. The IRS determined that a properly prepared return with the same information should have led to the taxpayer owing $2,359. *Id.* at 14.

In June 2021, Agent Schneider applied for various search warrants. *See generally* Dkt. No. 43-1. With the application, he submitted a lengthy affidavit detailing the alleged probable cause for the warrants, *id.* at 3–35, and four proposed warrants to search: (1) the premises of Manavalan's home and home office, *id.* at 36; (2) Manavalan's person, including "any digital devices or other electronic storage media found on his person," *id.* at 37; (3) "[t]he electronically stored data,

1   information and communication contained in, related to, and associated with, including all

2   preserved data associated with" two Google LLC email accounts listed in Attachment A-3, "as

3   well as all other subscriber and log records associated with the accounts," *id.* at 38; and (4) the

4   same information for Manavalan's email account with Oath Holdings Inc., as listed in Attachment

5   A-4, *id.* at 39.

6          Agent Schneider's affidavit also described the basis for seizing digital devices from

7   Manavalan's home and person. *Id.* at 19–20, 22–23, 24–29. In addition, the affidavit described the

8   proposed process to search the email accounts. *Id.* at 32–33.

9          The attachments also described the items to be searched. Specifically, Attachment B-1

10  proposed to authorize the Government to "search for the following evidence, fruits and/or

11  instrumentalities of Title 26 United States Code Section 7206(2) . . . for the time period January

12  1, 2016 through the present, whether recorded on paper or stored electronically on computers and

13  related peripheral devices," and listed the types of records, documents, and items to be seized and

14  searched. *Id.* at 40–41 (listing, for example, bank account records, loan records, credit card records,

15  account ledgers, balance sheets, documents and records relating to the preparation or filing of tax

16  returns, documents relating to training in tax law or the preparation of tax returns, and marketing

17  material for Manavalan or his business). It defined the terms "digital devices" and "electronic

18  storage media," and set forth parameters for the search and seizure of such devices or media. *Id.*

19  at 41–45 & nn. 1–2. The attachment specifically permitted the seizure of digital devices as

20  instrumentalities of the listed crimes, if they were "used as a means to commit the violations

21  described[.]" *Id.* at 41.

22         Attachment B-2 limited the search of Manavalan's person to "evidence, fruits, and

23  instrumentalities" of 26 U.S.C. § 7206(2) and 18 U.S.C. § 287. *Id.* at 46. Although that warrant

24  did not include a date range, the Government notes that it was limited to items found on

1    Manavalan's person on the date of the search, Dkt. No. 60 at 5, and Manavalan does not contend

2    that he was searched more than once. The attachment also listed types of records, documents, and

3    digital devices that could be seized under the warrant. Dkt. No. 43-1 at 46–48. And it defined

4    parameters for the search of Manavalan's cellular telephone and other communication devices,

5    limiting the search to those categories of information likely to be relevant to the listed crimes. *Id.*

6    at 46 (listing, for example, photographs of tax filings, messages related to the listed crimes, and

7    recent calls).

8         Attachments B-3 and B-4—related to the email accounts—each included two parts. The

9    first part listed the information to be disclosed to the Government by the email service providers.

10   *Id.* at 49–50, 53–54. The second part listed information that could be seized by the Government.

11   *Id.* at 51–52, 55–56.

12        United States Magistrate Judge S. Kate Vaughan approved the search warrant application

13   on June 3, 2023. Dkt. No. 43-1 at 2. The IRS executed the search of Manavalan's person and

14   premises on June 8, 2021. Dkt. No. 60 at 5. The IRS also served the email warrants on Google and

15   Oath, received responsive data, searched the data sets "for files within the scope of the warrants,"

16   and seized a subset of the data produced. *Id.* at 6.

17   **B.      Manavalan Was Indicted**

18        In December 2023, Manavalan was indicted on 14 counts of Aiding and Assisting in the

19   Preparation and Presentation of a False and Fraudulent Return in violation of 26 U.S.C. § 7206(2)

20   for actions occurring between April 2019 and April 2021. Dkt. No. 1 at 1–3.[2] Specifically, the

21   returns "represented that the taxpayers were entitled under the provisions of the Internal Revenue

22   laws to claim deductions for items and in amounts specified" in the Indictment, even though

23   _____

24   [2] Before trial, the Government moved to dismiss counts 13 and 14 related to taxpayer D.Y., and the Court granted that unopposed motion. Dkt. Nos. 67–68.

ORDER DENYING MOTION TO SUPPRESS THE RESULTS OF SEARCH WARRANTS - 4

1    Manavalan "knew[] the taxpayers were not entitled to claim deductions in the claimed amounts[.]"

2    Dkt. No. 1 at 1–2. The alleged scheme resulted in "reduction of the taxpayer's taxable income and

3    the taxpayer receiving credits for which they were ineligible." *Id.* Trial is scheduled to begin on

4    January 20, 2026. Dkt. No. 36.

5    **II.    DISCUSSION**

6        Manavalan contends that the fruits of the warrants must be suppressed because the warrants

7    did not describe with reasonable particularity the items to be seized, and they were overbroad. Dkt.

8    No. 43 at 1–2; *see also generally* Dkt. No. 62. The Government responds that the warrants were

9    sufficiently particular and not overbroad. Dkt. No. 60 at 7–12. The Government also argues that

10   regardless, the warrants were executed in good faith. *Id.* at 12–13.

11   **A.    Legal Standard**

12       The Fourth Amendment imposes the following requirements: (1) "warrants must be issued

13   by neutral, disinterested magistrate[ judge]s"; (2) "those seeking the warrant must demonstrate to

14   the magistrate [judge] their probable cause to believe that the evidence sought will aid in a

15   particular apprehension or conviction for a particular offense"; and (3) "warrants must particularly

16   describe the things to be seized, as well as the place to be searched." *Dalia v. United States*, 441

17   U.S. 238, 255 (1979) (citation modified). Here, Manavalan primarily challenges the third element,

18   and relatedly argues that while the Government may have supplied probable cause to search some

19   items, it did not provide probable cause to support the broad search and seizure that resulted. *See*

20   *generally* Dkt. No. 43.

21       Probable cause requires "a reasonable nexus between the activities supporting probable

22   cause and the locations to be searched." *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993)

23   (citation modified). As for particularity, "[t]he Fourth Amendment requires that a warrant

24   particularly describe both the place to be searched and the person or things to be seized." *United*

ORDER DENYING MOTION TO SUPPRESS THE RESULTS OF SEARCH WARRANTS - 5

1    *States v. Smith*, 424 F.3d 992, 1004 (9th Cir. 2005) (citation modified). "The description must be

2    specific enough to enable the person conducting the search reasonably to identify the things

3    authorized to be seized. The purpose of the breadth requirement is to limit the scope of the warrant

4    by the probable cause on which the warrant is based[.]" *Id.* (citation modified); *see also United*

5    *States v. Adjani*, 452 F.3d 1140, 1147 (9th Cir. 2006) ("The Fourth Amendment's specificity

6    requirement prevents officers from engaging in general, exploratory searches by limiting their

7    discretion and providing specific guidance as to what can and cannot be searched and seized.").

8    "[T]he level of detail necessary in a warrant is related to the particular circumstances and the nature

9    of the evidence sought," *Adjani*, 452 F.3d at 1147, such that "[w]arrants which describe generic

10   categories of items are not necessarily invalid if a more precise description of the items subject to

11   seizure is not possible," *id.* at 1147–48 (quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th

12   Cir. 1986)). To determine if a warrant is insufficiently particular or overbroad, courts consider the

13   following factors:

14           (1) whether probable cause exists to seize all items of a particular type described in
             the warrant, (2) whether the warrant sets out objective standards by which executing
15           officers can differentiate items subject to seizure from those which are not, and
             (3) whether the government was able to describe the items more particularly in light
16           of the information available to it at the time the warrant was issued.

17   *Spilotro*, 800 F.2d at 963 (internal citations omitted) (applying these factors to a particularity

18   challenge); *United States v. Flores*, 802 F.3d 1028, 1044 (9th Cir. 2015) (applying these factors to

19   an overbreadth challenge).

20           Here, Manavalan does not argue that the warrants lacked probable cause. *See* Dkt. No. 43

21   at 7. Instead, he argues that "the warrants fail because they lack sufficient particularity and are

22   overbroad." *Id.*

23

24

ORDER DENYING MOTION TO SUPPRESS THE RESULTS OF SEARCH WARRANTS - 6

1    **B.    The Warrants Were Sufficiently Particularized**

2    Manavalan contends that although the warrants "identify a time period and reference two

3    criminal statutes," they "fail to specify the particular items of evidence to be searched for and

4    seized from [his] person, home/office, digital devices, storage media, and emails." Dkt. No. 43 at

5    8. He argues that the warrants "vaguely authorized the government to search for 'evidence, fruits

6    and instrumentalities' of alleged false tax preparation and government fraud from 2016 to the

7    present." *Id.* He also asserts that the "delayed search procedure for digital devices and electronic

8    storage media, and a 'seize first-search later' process for [his] email accounts in the possession of

9    Google and Oath Holdings, heighten the profound intrusions on [his] reasonable expectations of

10   privacy." *Id.* at 9. Manavalan argues that these issues turned the warrants into "general warrant[s],"

11   which are impermissible. *Id.*

12   The Government responds that the warrants are sufficiently particular because they

13   "granularly list types of documents, devices, and electronic information subject to search and

14   seizure." Dkt. No. 60 at 7. It also argues that the "defense's arguments about particularity rest on

15   several misconceptions," including that the warrant provides insufficient guidance on what to seize

16   regarding digital devices, even though the warrant provides that guidance. *Id.* at 8.

17   The Court agrees with the Government that the warrants list with sufficient particularity

18   the types of documents to be seized, link them to the relevant statutes, and do not generally

19   authorize the seizure of all business records. *See, e.g.*, Dkt. No. 43-1 at 40–42 (premises warrant

20   listing the type of business records to be seized, including records on digital devices); *id.* at 46

21   (person warrant listing types of business records to be seized). Although the email warrants

22   required Google and Oath to disclose the contents of all emails associated with the relevant

23   accounts from 2016 to 2021, they limited what the Government could seize to specific, relevant

24   categories. Dkt. No. 43-1 at 49–56 (listing, for example, communications between Manavalan and

his tax clients or the IRS, communications relating to MAS, and evidence indicating the account owner's state of mind as it related to the crimes under investigation). And as the Government notes, Dkt. No. 60 at 8, the description of items subject to seizure applies to both physical and electronically stored information, Dkt. No. 43-1 at 40. The descriptions were specific enough to enable the agents conducting the search to identify the things authorized to be seized and did not permit an unlawful general search. *See Spilotro*, 800 F.2d at 963. Manavalan relies on *United States v. Kow* as "instructive," Dkt. No. 43 at 10, but there, unlike in this case, the warrants "contained no limitations on which documents within each category could be seized or suggested how they related to specific criminal activity," failed "to describe in a warrant the specific criminal activity suspected," and failed to "limit the scope of the seizure to a time frame within which the suspected criminal activity took place," *Kow*, 58 F.3d 423, 427 (9th Cir. 1995).

Manavalan also suggests that the volume of evidence seized—"75 bankers' boxes of physical records, 46 physical devices, and 82,554 data files from three email accounts"— highlights "the lack of clear instructions" in the warrants. Dkt. No. 43 at 10; *see also* Dkt. No. 62 at 2 (arguing that "the IRS seized all, or nearly all, of Mr. Manavalan's records"). The Government responds that the volume of material seized does not reflect a lack of clarity in the search and seizure procedures, and the warrants appropriately link the items to be seized to the relevant statutes and a specific time period. Dkt. No. 60 at 9. Regardless of whether Manavalan's argument in this vein goes to particularity or overbreadth, the quantity of material seized is not determinative; rather, "[t]he search and seizure of large quantities of material is justified if the material is within the scope of the probable cause underlying the warrant." *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir. 1986). Manavalan does not contend that the scope of what was seized exceeded the scope of the warrants, and his overbreadth contention is addressed below.

Finally, Manavalan argues that "the warrant could have limited the period to when the undercover's tax return was prepared." Dkt. No. 43 at 11. The Government responds that although that limitation was possible, the warrants did not need to be so limited because the affidavit "provides probable cause for a multi-year scheme involving thousands of tax returns filed between tax years 2016 and 2020." Dkt. No. 60 at 10. The Court agrees with the Government that the affidavit provided probable cause for a multi-year search. *See, e.g.*, Dkt. No. 43-1 at 8–15 (describing irregularities between 2016 and 2021). Although Manavalan attempts to argue that his tax filings were not "permeated with fraud," Dkt. No. 43 at 13, as the Court previously noted,

> the anomalies identified by Agent Schneider are quite extreme. For example, while the national average percentage of returns with unreimbursed business expenses in 2016 and 2017 was 11 percent, 77 and 71 percent of returns prepared by Manavalan, respectively, claimed such expenses. Dkt. No. 47-2 at 4. While the national average percentage of returns with Schedule C losses from 2018 to 2020 were four percent, four percent, and three percent, respectively, 30 percent, 46 percent, and 63 percent of returns prepared by Manavalan, respectively, contained such losses. *Id.* at 5. And while the national average percentage of returns with Schedule D losses from 2018 to 2020 were five percent, five percent, and two percent, respectively, 86 percent, 87 percent, and 91 percent of returns prepared by Manavalan, respectively, contained such losses. *Id.* at 5–6.

Dkt. No. 74 at 10 n. 3; *see also* Dkt. No. 43-1 at 8–11 (Schneider's search warrant affidavit discussing these statistics). For all these reasons, the warrants did not need to be limited to the time period when the undercover agent's tax return was prepared. In sum, Manavalan has not shown that the warrants were insufficiently particular.

**C.    The Search Warrants Were Not Overbroad**

Manavalan argues that the warrants were overbroad because they allowed the Government to search and seize "generic" categories of business records. Dkt. No. 43 at 12. He contends that neither the statistical anomalies nor the undercover operation supplied probable cause to believe that relevant evidence "will be found in *all* client records, *all* tax years for the entire period that Mr. Manavalan is required to retain records, *all* digital devices or storage media, or the content of

ORDER DENYING MOTION TO SUPPRESS THE RESULTS OF SEARCH WARRANTS - 9

*all* email accounts maintained by Mr. Manavalan." *Id.* at 12–13. He alleges that "[t]he government's failure to limit the scope of the warrant to the probable cause in the affidavit is fatal" because while the Government had knowledge about the inaccurate tax return for the undercover agent, it lacked the same for records dating back to 2016. *Id.* at 13–14.

The Government disputes that the warrants were overbroad. Dkt. No. 60 at 10. It notes that although Manavalan argues that there was probable cause related only to the undercover agent's tax return, the affidavit described years-long conduct, and Judge Vaughan issued broader warrants. *Id.*

The Court first finds that probable cause existed for the full scope of the warrants. Agent Schneider's affidavit described statistical anomalies in the tax returns Manavalan prepared for tax years 2016 through 2020. Dkt. No. 43-1 at 8–15. The affidavit also provided a detailed explanation of how the returns Manavalan prepared deviated significantly from national averages for the tax years 2016 through 2020, and how Manavalan included the same type of unsupported losses in the return he prepared for the undercover agent. *Id.* at 6–15. The affidavit therefore presented a "fair probability" that criminal activity would be found in the items and locations to be searched. *Flores*, 802 F.3d at 1043 (citation omitted). In addition, Judge Vaughan issued the warrants, Dkt. No. 43-1 at 2, and courts "give great deference to an issuing judge's finding that probable cause supports the warrant," *Flores*, 802 F.3d at 1043 (citation modified). The Court thus finds "a reasonable nexus" between the alleged crimes and the items to be searched. *Pitts*, 6 F.3d at 1369.

The warrants also "set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not." *Flores*, 802 F.3d at 1044 (citation omitted). The warrants for the premises and both sets of emails explicitly authorized a time period of 2016 to the present (June 2021). Dkt. No. 43-1 at 40, 49, 51, 53, 55. The person warrant did not include a date, but it was limited to allowing agents to seize "any digital devices or other electronic

1    media found on" Manavalan at the time of the search. *Id.* at 37. Moreover, as the Government

2    notes, Dkt. No. 60 at 11, the warrants were tailored to the probable cause laid out in Agent

3    Schneider's affidavit, and to the specific criminal violations at issue. Thus, "[t]he warrant[s] here

4    w[ere] no more 'general' than what was necessarily required under the circumstances." *United*

5    *States v. Appoloney*, 761 F.2d 520, 524 (9th Cir. 1985).

6        As for "whether the government could have described the items more particularly in light

7    of the information available," *Flores*, 802 F.3d at 1044 (citation omitted), the Court disagrees with

8    Manavalan that the warrants should have been limited to information related to the undercover

9    agent's return. *See* Dkt. No. 43 at 13–14. As set forth above, the IRS provided probable cause for

10   broader warrants. In addition, courts have rejected arguments that the Government should have

11   narrowed searches of subjects' email accounts and computer files because "[t]o require such a

12   pinpointed computer search, restricting the search to an email program or to specific search terms,

13   would likely have failed to cast a sufficiently wide net to capture the evidence sought." *Adjani*,

14   452 F.3d at 1149–50; *see also id.* at 1150 ("Computer files are easy to disguise or rename, and

15   were we to limit the warrant to such a specific search protocol, much evidence could escape

16   discovery simply because of [defendant's] labeling of the files documenting [his] criminal

17   activity."). "'Over-seizing' is an accepted reality in electronic searching because there is no way

18   to be sure exactly what an electronic file contains without somehow examining its contents."

19   *Flores*, 802 F.3d at 1044–45 (citation modified). Here, the Government protected against a danger

20   that "over-seizing" might "turn[] into a general dragnet" by "specify[ing] the particular crime for

21   which evidence is sought." *Id.* at 1045. There is also no suggestion that the seized data was "used

22   for any broader investigative purposes" or in violation of third parties' rights. *Id.* Accordingly, the

23   warrants were not overbroad.

24

ORDER DENYING MOTION TO SUPPRESS THE RESULTS OF SEARCH WARRANTS - 11

1    **D.    The Search Warrants Were Executed in Good Faith**

2    The Government argues that even if the warrants were overbroad or not sufficiently

3    particular, their fruits should not be suppressed because the warrants were executed in good faith.

4    Dkt. No. 60 at 12–13. Manavalan responds that "*Leon* good-faith does not apply because the

5    warrants are facially overbroad and no reasonable officer would rely on them in good faith." Dkt.

6    No. 62 at 6 (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)).

7    "The exclusionary rule does not apply to an officer's objectively reasonable reliance on a

8    subsequently invalidated search warrant, unless the warrant was based on an affidavit so lacking

9    in indicia of probable cause as to render official belief in its existence entirely unreasonable."

10   *United States v. Jobe*, 933 F.3d 1074, 1077 (9th Cir. 2019) (citation modified); *see also United*

11   *States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007) (courts need not resolve "whether the

12   affidavit supported probable cause" before "proceed[ing] directly to the issue of whether there was

13   good faith reliance"). "[A]n officer cannot be expected to question the magistrate [judge]'s

14   probable-cause determination, unless the affidavit is bare bones, *i.e.*, it fails to provide a colorable

15   argument for probable cause[.]" *Jobe*, 933 F.3d at 1077 (citation modified).

16   As discussed above, the affidavit and its attachments submitted in support of the warrant

17   application contained substantial evidence against Manavalan and cited the specific criminal

18   statutes at issue. *See* Dkt. No. 43-1 at 3–56. In no way can the affidavit be described as "bare

19   bones." *Jobe*, 933 F.3d at 1077. Therefore, even if the warrants as a whole—or the portion that

20   went beyond seizing documents related to the undercover agent's tax return—should not have been

21   issued, officers did not act unreasonably by seizing and searching the records described in the

22   warrants.

23

24

1

## III.  CONCLUSION

2     For the foregoing reasons, the Court DENIES Manavalan's motion to suppress the fruits

3   of the four search and seizure warrants. Dkt. No. 43.

4     Dated this 5th day of January, 2026.

5

6                                                             Lauren King
                                                              United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING MOTION TO SUPPRESS THE RESULTS OF SEARCH WARRANTS - 13