1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

UNITED STATES OF AMERICA,

CASE NO. 2:23-cr-00192-LK

12

Plaintiff,

v.

ORDER REGARDING MOTIONS
IN LIMINE

13

THANJAVUR MANAVALAN,

14

Defendant.

15

16     This matter comes before the Court on motions in limine filed by the Government, Dkt.

17   No. 69, and by Defendant Thanjavur Manavalan, Dkt. Nos. 71, 72. For the reasons stated below,

18   the Court grants the Government's motions in limine, Dkt. No. 69, denies Manavalan's motion in

19   limine to exclude use of the term "victim," Dkt. No. 71, and denies Manavalan's motion in limine

20   to prevent Agent Schneider from using the terms "false" or "fabricated," Dkt. No. 72.

21                              **I.   BACKGROUND**

22     The Government plans to try Manavalan on 12 counts of Aiding and Assisting in the

23   Preparation and Presentation of a False and Fraudulent Return in violation of 26 U.S.C. § 7206(2).

24

ORDER REGARDING MOTIONS IN LIMINE - 1

1    Dkt. No. 1 at 1–3; Dkt. No. 68 (dismissing two counts). Trial is scheduled to begin on March 16,

2    2026. Dkt. No. 98.

3    ## II.    DISCUSSION

4    **A.    Legal Standard**

5    Parties may move "to exclude anticipated prejudicial evidence before the evidence is

6    actually offered," *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984), and the Court enjoys "wide

7    discretion in determining the admissibility of evidence," *United States v. Abel*, 469 U.S. 45, 54

8    (1984). The Court may amend, renew, or reconsider its rulings in limine in response to

9    developments at trial. *Luce*, 469 U.S. at 41–42.

10    The Court's analysis is guided primarily by Federal Rules of Evidence 401 and 403. *See*

11    *Houserman v. Comtech Telecomms. Corp.*, 519 F. Supp. 3d 863, 867 (W.D. Wash. 2021). The

12    district court must first consider whether the evidence at issue "has any tendency to make a fact

13    more or less probable than it would be without the evidence," and whether "the fact is of

14    consequence in determining the action." Fed. R. Evid. 401. If so, the evidence is relevant and

15    therefore generally admissible. *See* Fed. R. Evid. 402. But there are many exceptions to this general

16    rule. Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative

17    value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues,

18    misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

19    **B.    Agreed Motions in Limine**

20    Pursuant to Federal Rule of Criminal Procedure 12 and Local Criminal Rule 23.1(6), the

21    Government has submitted two agreed motions in limine proposing that the Court (1) exclude

22    "evidence, argument, or any mention of the potential penalties that could be imposed or collateral

23    consequences that could result if Manavalan is found guilty"; and (2) exclude all potential

24    witnesses from the courtroom "during all portions of the trial until they are called to testify, with

ORDER REGARDING MOTIONS IN LIMINE - 2

1    the exception of the government's case agent, IRS-CI Special Agent Chris Schneider." Dkt. No.

2    69 at 2. Pursuant to the parties' agreement, the Court grants these agreed motions in limine;

3    provided, however, that the Court presumes that the parties do not intend to exclude Manavalan (a

4    potential witness) from the courtroom. The Court further clarifies that non-exempt witnesses

5    subject to recall will be required to exit the courtroom until called back or excused, while excused

6    witnesses may exit or remain in the courtroom following their testimony at their election. Counsel

7    must ensure that there are no prospective non-exempt witnesses in the courtroom during the

8    testimony of another witness.

9    **C.    The Government's Motion to Permit Recall of Case Agent Schneider**

10          The Government "seeks permission to recall its case agent, Special Agent Schneider, on

11    one occasion during its case-in-chief, to allow for the orderly and sequential presentation of

12    evidence in a manner helpful to the jury." Dkt. No. 69 at 3. The Government plans to call Agent

13    Schneider at or near the outset of its case to testify about "his investigation and basic tax concepts,"

14    to "ground the jury" on these topics. *Id.* at 4. "[A]t or near the conclusion of [its] case," the

15    Government will recall Agent Schneider to testify about more "specific topics[,] including

16    observations about tax returns prepared by Manavalan," "tax documents provided by taxpayers,

17    and certain statements made by Manavalan" to "present the information in a logical and coherent

18    manner for the jury." *Id.* (noting that the latter topics will "draw on evidence and concepts that will

19    be introduced through other witnesses at trial"). The Government argues that "[t]he alternatives—

20    having Special Agent Schneider conditionally discuss evidence and uncontextualized concepts

21    before they are introduced through subsequent witnesses, or having Special Agent Schneider

22    testify about his investigation and general tax concepts towards the end of the case—run the risk

23    of unnecessarily confusing the jury." *Id.* at 5. The Government further contends that Federal Rule

24    of Evidence 611 gives the Court "wide latitude" to allow the "mode and order of examining

ORDER REGARDING MOTIONS IN LIMINE - 3

1    witnesses" and permits the recall of Agent Schneider for the "orderly and logical presentment of

2    testimony." *Id.* at 3.

3         Manavalan responds that "[t]he proposed recall of SA Schneider creates a risk of undue

4    emphasis on the government's narrative and could unfairly bolster the credibility of other

5    witnesses' testimony." Dkt. No. 77 at 2. He argues that Agent Schneider will testify in a "dual role

6    as case agent and witness," which "creates a creates a risk of prejudice similar to that identified in

7    *United States v. Johnson*, 54 F.3d 1150 (4th Cir. 1995) and *United States v. Mejia*, 545 F.3d 179

8    (2d Cir. 2008)." *Id.*; *see also id.* at 4 ("Recalling SA Schneider creates an unfair advantage by

9    giving the government two opportunities to make impressions on the jury through the same

10   witness, effectively providing a mid-trial summation that the defense cannot counter with similar

11   recall privileges.").

12        Rule 611(a) directs courts to "exercise reasonable control over the mode and order of

13   examining witnesses and presenting evidence so as to: (1) make those procedures effective for

14   determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue

15   embarrassment." Fed. R. Evid. 611(a)(1)–(3). Ultimately, "[d]istrict courts have wide latitude over

16   the order of testimony at trial." *United States v. Bailey*, 973 F.3d 548, 564 (6th Cir. 2020); s*ee also*

17   *United States v. Butera*, 677 F.2d 1376, 1381 (11th Cir. 1982) (noting that the government's case

18   agent "took the stand on four separate occasions to describe the underlying events in the case in

19   chronological order" and holding that the "sequential presentation" of the case agent's testimony

20   was "a matter entrusted to the district court's discretion under Federal Rule of Evidence 611(a)"

21   that did not prejudice the defendant).

22        Here, Manavalan has not shown that he will be prejudiced if Agent Schneider testifies

23   twice. Manavalan argues that the same risk of prejudice that was present in *Johnson* and *Mejia* is

24   present here because "SA Schneider's testimony after other witnesses could effectively function

ORDER REGARDING MOTIONS IN LIMINE - 4

1    as a summation of the government's case before closing arguments, potentially usurping the jury's

2    role in weighing evidence independently." Dkt. No. 77 at 2. The Government counters that

3    *Johnson* and *Mejia* are inapposite because neither case involved recalling a witness, and "in both

4    of those cases, the government put on its case agents as expert witnesses and asked those experts

5    to characterize other trial testimony," while here Agent Schneider will not testify as an expert

6    witness. Dkt. No. 69 at 4. The Court finds that Agent Schneider's anticipated *lay* testimony does

7    not present the same risk present in *Johnson* and *Mejia* that *expert* witnesses would lend credibility

8    to the testimony of other witnesses. *See Mejia*, 545 F.3d at 196 (noting that "[w]hen case agents

9    testify as experts, they gain unmerited credibility when testifying about factual matters from first-

10   hand knowledge" (citation modified)); *see also Johnson*, 54 F.3d at 1157–58 (discussing the

11   "dangers inherent in using a summary witness" who also testifies as an expert). Prejudice from

12   recall is also unlikely here because Agent Schneider will be subject to cross-examination during

13   each appearance. *See Butera*, 677 F.2d at 1381.

14         Moreover, as the Government notes, "[t]he defense's opposition really seems focused on

15   the substance of Special Agent Schneider's testimony, and its placement at the close of the

16   government's case, rather than a particular issue with recall." Dkt. No. 69 at 5. The Court agrees

17   with the Government that to the extent that Manavalan fears that Agent Schneider will provide "a

18   mid-trial summation," Dkt. No. 77 at 4, that fear arises from the timing and substance of his

19   testimony rather than from his recall. The same is true for his concern that Agent Schneider will

20   testify in a "dual role as case agent and witness," Dkt. No. 77 at 2, which is true every time a case

21   agent testifies as a lay witness, and is not prejudicial here. As for the timing, Manavalan has not

22   sought an order requiring Agent Schneider to testify first, nor would such an order be appropriate.

23   *See, e.g.*, *United States v. Garcia*, No. 18-CR-00466-BLF, 2021 WL 4594774, at *5 (N.D. Cal.

24   Oct. 6, 2021) ("Finally, the Court declines to order the Government's case agent to testify first. As

ORDER REGARDING MOTIONS IN LIMINE - 5

1    *Thomas* holds, the Government's case agent is an exempt witness who may sit in the courtroom

2    throughout the trial, notwithstanding the fact that he may serve as a fact witness later in the trial."

3    (citing *United States v. Thomas*, 835 F.2d 219, 222–23 (9th Cir. 1987))).

4            Accordingly, the Court grants the Government's motion—the Government may recall

5    Agent Schneider one time in its case-in-chief.

6    **D.**      **Manavalan's Motion to Exclude Use of the Term "Victim"**

7            Manavalan has filed a motion in limine to preclude the Government from using the term

8    "victim" to describe the United States, the Internal Revenue Service ("IRS"), and the "public at

9    large." Dkt. No. 71 at 1. He argues that he is presumed innocent, but use of the term "victim"

10   "would presuppose the jury's potential conclusions" that crimes were committed and victims exist,

11   and "lessen the government's constitutionally mandated burden of proof." *Id.* at 5.

12           The Government responds that this motion—and Manavalan's motion discussed below

13   regarding the use of other terms—would "inject unnecessary testimonial landmines into this trial."

14   Dkt. No. 81 at 1. The Government contends that the use of the term "victim" is not inherently

15   prejudicial, it should be permitted to identify the "downstream victims of Manavalan's scheme,"

16   and witnesses should not be precluded from using the term—including IRS witnesses when

17   identifying taxpayers who were allegedly harmed "because they had to correct and amend their

18   returns." *Id.* at 2. In addition, the Government notes that the jury instructions "provide clear

19   guidance to the jury on its role as factfinder, the presumption of innocence, and what is and is not

20   evidence." *Id.* (citing Ninth Circuit Model Criminal Jury Instructions 1.1, 1.2, 1.3, 1.4, 6.1, 6.6,

21   6.7). Finally, the Government argues that there is no dispute that the United States, the IRS, and

22   the public are victims; the only dispute is whether Manavalan or his taxpayer clients are

23   responsible for the harm caused by the inaccurate returns. *Id.*

24

ORDER REGARDING MOTIONS IN LIMINE - 6

1    The Court agrees with the Government that its counsel and witnesses should not be

2    precluded from using the term "victim" when describing the alleged tax harm to the United States,

3    the IRS or the public, or the alleged tax harm to individuals. Manavalan has presented no evidence,

4    statistical or otherwise, that the word "victim" or any other similar term is prejudicial. And like

5    other courts, this Court finds that the term is not inherently prejudicial. *See, e.g.*, *United States v.*

6    *Jefferson*, No. 2:23-CR-00109-LK, 2024 WL 4028638, at *2 (W.D. Wash. Sept. 3, 2024); *United*

7    *States v. Lussier*, No. 18-CR-281(NEB/LIB), 2019 WL 2489906, at *5 (D. Minn. June 15, 2019);

8    *United States v. Henery*, No. 1:14-CR-00088-BLW, 2015 WL 409684, at *5 (D. Idaho Jan. 29,

9    2015). The term "victim" is "commonly used in the legal process, and the terms 'defendant' and

10    'victim' appear frequently in the Ninth Circuit Model Criminal Jury Instructions." *United States*

11    *v. Pilisuk*, No. CR22-001 TL, 2023 WL 576523, at *4 (W.D. Wash. Jan. 27, 2023); *see also United*

12    *States v. Washburn*, 444 F.3d 1007, 1013 (8th Cir. 2006) (noting that "the term 'victim' in jury

13    instructions is not prejudicial to a defendant's rights when . . . the instructions taken as a whole

14    clarify the government's burden of proving all elements of the crime").

15    As in every case, "[t]he jury will understand, and will in fact be instructed, that this is a

16    criminal case brought by the Government, but that the indictment and the charges are only an

17    accusation." *Henery*, 2015 WL 409684, at *5 (denying motion to preclude reference to a "victim").

18    In the two cases Manavalan relies on from this district, the courts permitted use of the term

19    "victim" at least to some extent. Dkt. No. 81 at 3; *United States v. Powell*, No. CR15-244-RAJ,

20    2016 WL 524251, at *2–3 (W.D. Wash. Feb. 10, 2016) (permitting detective to use the term

21    "victim" "when referring to categories of individuals if necessary to explain his testimony and to

22    avoid confusion of the jury"); *Pilisuk*, 2023 WL 576523, at *4 (denying motion to exclude terms

23    "victim," "suspect," and "defendant" but "encourag[ing] Defendant to propose supplemental

24    language for jury instructions with regard to these terms, if appropriate").

ORDER REGARDING MOTIONS IN LIMINE - 7

1    Manavalan's motion is therefore denied. Of course, "while the terms in and of themselves

2    do not necessarily infer any opinion, the manner in which they are used (*e.g.*, the tone, emphasis,

3    or body language accompanying the use of the terms), could potentially convey an opinion."

4    *Pilisuk*, 2023 WL 576523, at *4. To the extent Manavalan believes the Government or a witness

5    is crossing this line at trial, he is free to object.

6    **E.      Manavalan's Motion to Exclude Use of the Terms "False" or "Fabricated"**

7    Manavalan "requests an order to exclude use of the terms 'false' or 'fabricated' by Special

8    Agent Christopher Schneider." Dkt. No. 72 at 1. Manavalan notes that the parties have agreed that

9    Agent Cherkashin will not testify that any tax returns are "false" or "fabricated," and that Agent

10   Cherkashin could testify that "he 'treated' certain items in the tax returns as false for the purpose

11   of calculating the alleged tax loss." *Id.* at 1–2. However, "[t]he parties were unable to reach a

12   similar agreement as to SA Schneider's testimony." *Id.* at 2. Manavalan contends that while Agent

13   Schneider may testify as a lay witness, "conclusory statements that returns are 'false or fabricated'

14   would exceed the permissible scope of lay opinion testimony," "constitute impermissible expert

15   testimony," and improperly rely on testimonial hearsay. *Id.* at 3.[1]

16   The Government responds that "[a]lthough the government believes it constitutes an overly

17   narrow application of [Federal Rule of Evidence 704], it has agreed to follow a recent out-of-

18   District ruling in a tax preparer case that precluded the government's expert from using the words

19   'false' or 'fraudulent' regarding any of the tax returns in the charged offenses." Dkt. No. 81 at 3

20

21   [1] Although Manavalan's motion in limine does not ask the Court to preclude Agent Schneider from using the word "fraudulent," *see generally* Dkt. No. 72, the Government states in a footnote that it "clarified via emails exchanged on December 22, 2025, that the defense intends to preclude Agent Schneider from using all three words: 'false,'

22   'fraudulent,' and 'fabricated.'" Dkt. No. 81 at 4 n.1. This order does not address the word "fraudulent" because Manavalan did not move to prohibit its use. "In our adversarial system of adjudication, we follow the principle of party presentation" in which "the parties frame the issues for decision" in accordance with applicable law. *Clark v.*

23   *Sweeney*, No. 25–52, 2025 WL 3260170, at *1 (U.S. Nov. 24, 2025) (citation modified); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform

24   the discussion and raise the issues to the court.").

ORDER REGARDING MOTIONS IN LIMINE - 8

1    (citing *United States v. Sanchez*, 655 F. Supp. 3d 1062, 1072 (D. Idaho 2023) (internal quotation

2    marks omitted)). Although Agent Cherkashin will avoid the words "false" and "fraudulent," he

3    "will assess and testify about whether [the tax items] were, for instance, (in)accurate, (im)proper,

4    (un)supported, etcetera, and he may use those or other adjectives—just like the expert in *Sanchez*

5    was permitted to do." *Id.* However, the Government does not agree to extend the same limitations

6    to Agent Schneider's testimony. The Government argues that because Agent Schneider is not

7    providing expert testimony, "the limitation in Rule 704(b), and the *Sanchez* case's application of

8    that rule, do not apply." *Id.* at 4. It also contends that Agent Schneider "is perfectly capable of

9    explaining whether the returns are false, in the sense of being inconsistent with the underlying tax

10   documents," and "for tax returns about which the taxpayers will testify, he can also explain

11   whether they are false as compared to the taxpayers' statements." *Id.*

12       Manavalan acknowledges that he previously challenged other aspects of Agent Schneider's

13   testimony as impermissible expert testimony, Dkt. No. 72 at 2—in fact, he advanced some of the

14   same arguments in that earlier motion, *see, e.g.*, Dkt. No. 47 at 3–5 (arguing that the Government's

15   proposed testimony that indicted and uncharged counts include "falsified" contributions and losses

16   constituted expert testimony); but he does not explain why he failed to raise this related issue in

17   his prior motion, Dkt. No. 47. The Court's scheduling order required the parties to file pretrial

18   motions by November 21, 2025, and noted that "*[p]er the Court's Standing Order for All Criminal*

19   *Cases, Dkt. 10, motions in limine that could have been brought by the pretrial motions deadline*

20   *will be stricken*." Dkt. No. 38 at 2; *see also* Dkt. No. 10 at (same). The Court could thus deny this

21   motion as untimely.

22       After Manavalan filed this motion in limine, the Court issued an order about the permissible

23   scope of Agent Schneider's testimony. *See* Dkt. No. 74 at 5–13, 15–25. As relevant here, the Court

24   held that Agent Schneider could not rely on testimonial hearsay. *Id.* at 22. That ruling resolves

1    Manavalan's concern, Dkt. No. 72 at 3, that Agent Schneider will rely on testimonial hearsay: he

2    cannot.

3        The Court also laid out the permissible scope of Agent Schneider anticipated lay testimony:

4    he may testify as a lay witness about his observations and perceptions of the tax returns at issue,

5    but "to the extent that it is not apparent from the face of the return and related non-hearsay

6    documentation (such as brokerage statements) that the uncharged returns contained 'improperly

7    adjusted capital gains and losses and falsified charitable contributions, business losses, and foreign

8    investment losses,'" Agent Schneider is precluded from providing "testimony to that effect." Dkt.

9    No. 74 at 11–12. In light of that holding, the Court will not prohibit Agent Schneider from using

10   the term "false" to describe the tax returns and entries therein as facially inaccurate, unsupported,

11   or inconsistent with documentation or with trial testimony.[2] However, as a lay witness, Agent

12   Schneider cannot opine on those issues to the extent doing so requires specialized knowledge or

13   expertise. *See* Fed. R. Evid. 702(a); *United States v. Defoor*, 625 F. App'x 784, 787 (9th Cir. 2015)

14   (rejecting argument that IRS agent offered expert testimony when he testified that a defendant's

15   tax claims were "false" because "testifying that a claim was 'false' required no specialized

16   expertise" in the case).

17       Although the statute uses the word "false," *see* 26 U.S.C. § 7206(2), Agent Schneider's

18   anticipated testimony that some entries or returns are false does not invade the province of the jury

19   because the jury will "still have to draw its own inference from that testimony to determine if the

20   return was 'false'" as set forth in the statute. *Sanchez*, 655 F. Supp. 3d at 1072. The word "false"

21   does not have a specialized meaning in this context such that allowing witnesses to use the word

22

23   ─────────────────────
     [2] Manavalan repeatedly characterizes statements that returns are "false" or "fabricated" as "conclusory statements,"
     Dkt. No. 72 at 2–3, but nothing in the record indicates that Agent Schneider will use those terms without a factual
24   basis drawn from his own observations and perceptions.

ORDER REGARDING MOTIONS IN LIMINE - 10

constitutes a legal conclusion or otherwise invades the province of the jury. Indeed, the Ninth Circuit held in *United States v. Defoor* that the district court did not err when it permitted two IRS agents to testify at trial that the defendant—who was charged with conspiring to defraud the United States and filing false claims against the United States through a fraudulent income tax return scheme—filed "false" tax claims. 625 F. App'x at 786–87. "[N]othing in the record suggest[ed] that, when [the IRS agents] testified that the claims were 'false,' they intended the term to mean anything other than what it does in common parlance," nor was the Ninth Circuit able to find "any authority suggesting that the term 'false' has a specialized meaning in the law that is different from what the term means in the vernacular." *Id.* at 787; *see also United States v. Diaz*, 876 F.3d 1194, 1198–99 (9th Cir. 2017) (holding that "if the terms used by an expert witness do not have a specialized meaning in law and do not represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion"); *United States v. Hearst*, 563 F.2d 1331, 1351 (9th Cir. 1977) (testimony is not objectionable as containing a legal conclusion where the "average layman would understand those terms and ascribe to them essentially the same meaning intended"). So too here: testifying that a deduction is false—as in inaccurate or unsupported—does not invade the jury's province to determine if the return is false in the legal sense or if Manavalan acted willfully. *See* Ninth Circuit Model Criminal Jury Instruction 22.4, 22.6; Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue."). To the extent that the court in *Sanchez* believed that the subject witness's testimony tread into "specialized meaning" territory, 655 F. Supp. 3d at 1072, here, Agent Schneider's planned testimony portends no such trespass.

For the same reasons, the Court will not preclude Agent Schneider from opining that items appear fabricated, as long as the opinion does not require specialized knowledge or expertise. Although Manavalan argues that such testimony is precluded by *Sanchez*, Dkt. No. 72 at 4, that

1   case relied on Rule 704(b), which does not apply to lay testimony. *See Diaz v. United States*, 602

2   U.S. 526, 534 (2024) ("By its terms, Rule 704(b)'s exception covers a narrow set of opinions. The

3   exception does not . . . affect lay witness testimony.").

4        Accordingly, the Court denies this motion in limine.

5             **III.   CONCLUSION**

6        For the foregoing reasons, the Court GRANTS the Government's motions in limine, Dkt.

7   No. 69, DENIES Manavalan's motion in limine to exclude use of the term "victim, Dkt. No. 71,

8   and DENIES Manavalan's motion in limine to prevent Agent Schneider from using the terms

9   "false" or "fabricated," Dkt. No. 72.

10        Dated this 14th day of January, 2026.

11

12                              Lauren King
                           United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24