UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    v.<br><br>THANJAVUR MANAVALAN,<br><br>                  Defendant. | CASE NO. 2:23-cr-00192-LK<br><br>ORDER DENYING MOTION TO DISMISS |

This matter comes before the Court on Defendant Thanjavur Manavalan's Motion to Dismiss based on the Government's undisputed failure to disclose some of Manavalan's seized emails until shortly before the trial date. Dkt. No. 100. For the reasons stated below, the Court denies the motion.

## I.    BACKGROUND

The Government plans to try Manavalan on 12 counts of Aiding and Assisting in the Preparation and Presentation of a False and Fraudulent Return in violation of 26 U.S.C. § 7206(2). *See* Dkt. No. 1 at 1–3 (Indictment); *see also* Dkt. Nos. 67–68 (motion and order dismissing two

ORDER DENYING MOTION TO DISMISS - 1

counts). Before this dispute arose, trial was scheduled for January 20, 2026. *See* Dkt. No. 36. Now, trial is scheduled to begin on March 16, 2026. *See* Dkt. No. 96.

**A.      The Email Seizures and Production**

In June 2021, the Internal Revenue Service ("IRS") applied for and obtained search warrants related to Manavalan's tax return business—Mano Accounting Services LLC ("MAS"). *See generally* Dkt. No. 43-1. The warrants authorized the Government to search two Gmail accounts and one Yahoo email account. *Id.* at 38–39. The information subject to seizure included "[a]ny communication between Thanjavur Manavalan and his tax clients" and "[a]ny communication or information relating to Mano Accounting Services and its operation." *Id.* at 51, 55 (some capitalization removed). The IRS received full returns from Google (for the Gmail accounts) and from Oath Holdings Inc. (for the Yahoo account). *See id.* at 49–56 (describing items to be seized); Dkt. No. 102 at 2 ("The IRS executed those warrants pursuant to their terms: by receiving full returns from Google and Oath and seizing information authorized by the warrant."). Ben George, the IRS computer specialist who handled the email searches pursuant to the warrants, provided the seized emails (and other discovery) to the U.S. Attorney's Office ("USAO") on a hard drive in 2023. Dkt. No. 95-1 at 2. The USAO's litigation support team worked with Mr. George "to receive and process the Google and Oath files (among many others on the hard drive)." *Id.* at 3.

The Government began producing discovery to the defense in December 2023. *Id.* The Government's early productions to the defense included tens of thousands of pages of emails from Google and Oath, as well as indices of the files the IRS seized pursuant to the warrants. *Id.*; *see also* Dkt. No. 101 at 1–2 (the Government's pre-January 2026 productions totaled 836,798 pages "plus a separate digital forensics production exceeding two terabytes of data"). At that time, the Government stated in a letter to the defense that due to the size of the information obtained, the

ORDER DENYING MOTION TO DISMISS - 2

Government "d[id] not intend to affirmatively produce copies of the full returns from Google and Oath, but [would] make them available upon request." Dkt. No. 103-1 at 4. The Government resent that letter and the previously produced discovery when new defense counsel later appeared for Manavalan in June 2025. Dkt. No. 103 at 1–2.

In March 2025, the defense "identified file paths in the discovery index for Production 1 suggesting the existence of email attachments between Mr. Manavalan and a taxpayer (Vikash Jain) referenced in the Indictment" but could not locate them in the discovery produced by the Government. Dkt. No. 101 at 2. On June 12, 2025, before a scheduled meet and confer, the defense provided the Government with "a spreadsheet identifying unresolved discovery issues," including "missing email communications and attachments for multiple taxpayers named in the indictment, including Vikash Jain, Ravi Kiran Poluri, Kasthuri Alavala, Lakshman Thota, and Durga Yelavarthi." *Id.*; *see also* Dkt. No. 101-1 at 2. In response, the Government stated in writing that its production "contain[ed] everything the government seized from the Google and Oath accounts," and offered to provide copies of the original Google and Oath warrant returns if the defense wished. Dkt. No. 101 at 2 (citing Dkt. No. 101-2 at 2). At a June 30, 2025 meeting, the Government confirmed that it had produced all materials seized from the Google and Oath accounts. *Id.* "Based on these repeated representations, the defense declined to request the complete Google and Oath (Yahoo) warrant returns." *Id.*

**B.      The Discovery of Unproduced Emails**

On Thursday, January 1, 2026, while AUSA David Martin was reviewing documents recently produced and designated as trial exhibits by the defense, he discovered some email exchanges that he had not seen before. Dkt. No. 95-1 at 1–2. He was not able to find at least one of those email exchanges in the USAO's discovery database. *Id.* at 2. The following morning, AUSA Martin called Mr. George (the IRS computer specialist). *Id.* Mr. George found the email

that AUSA Martin had been unable to locate in the IRS's database of seized emails by using Nuix, the software that the IRS used to seize and produce the emails. *Id.* Mr. George and AUSA Martin "grew concerned" that the USAO database "omitted two large files that the IRS had exported from Nuix." *Id.* The same day, AUSA Martin brought the hard drive to the USAO litigation support team, "who confirmed that among many other files, the hard drive held two large Nuix files totaling approximately 67.5 GB and containing, after deduplication, a total of 172,697 Google and Oath files." *Id.* "Based on the size and quantity of those files compared to the USAO's discovery database," AUSA Martin "grew more confident that the Nuix files had not been produced through the database," and "spent parts of the weekend of January 3 and 4" investigating the issue. *Id.*

AUSA Martin avers that "[a]s best [he] can tell, despite efforts between Mr. George and [the USAO] to confirm accuracy and exhaustiveness, the two Nuix files were simply overlooked when the USAO processed the files into [its] discovery database." *Id.* at 3.[1] With respect to the Government's prior representations to the defense that full discovery had been produced, he explains:

> Tens of thousands of pages of Google and Oath emails were added to [the USAO] database, then reviewed and produced to the defense long ago, but [what was produced] appear[s] to be a subset that had been exported from the Nuix database and saved separately on the hard drive [that was given to the defense]. Until making the realization [that some emails were missing,] I and the rest of our case team operated with the understanding that the USAO discovery database, and thus the files produced to the defense, contained an exhaustive set of the seized Google and Oath emails. I have expressed that understanding—inaccurately, it turns out—to the defense in our discussions about discovery.

Dkt. No. 95-1 at 3.

On Monday, January 5, 2026, AUSA Martin and his co-counsel contacted Steve Mercer, lead counsel for Manavalan, and notified him of the error. *Id.* at 3. By email the same day, AUSA

---

[1] In a later letter following further investigation, the Government noted that the USAO's failure to add all of the seized emails to the office's discovery database may "have occurred in connection with, or following," a filter review for attorney-client privilege. Dkt. No. 103-4 at 1.

ORDER DENYING MOTION TO DISMISS - 4

Martin stated that there were 135,525 unproduced Google files and 37,172 unproduced Yahoo/Oath files. Dkt. No. 103-3 at 4. He also offered to produce the documents as Nuix files. *Id.* at 3. Defense counsel confirmed that they could not view the documents in that format and "would need them to be processed and produced by the government." Dkt. No. 103 at 2. The parties discussed a trial date continuance, and AUSA Martin wrote to Mr. Mercer that the Government "would not oppose either March 16, if you think that leaves you sufficient time to review [the emails], or August 24, if you need the extra time to review them," to which Mr. Mercer responded, "We prefer March 16." *Id.* Defense counsel states that at that time, the Government represented that the supplemental email production "would take approximately one week," Dkt. No. 101 at 3, but in an email dated January 6, 2026, AUSA Martin stated that he was "*optimistic* that [they] would] have [the documents] produced *next week.*" Dkt. No. 105-1 at 2 (emphasis added). Producing them "next week" would have been by Friday, January 16.

AUSA Martin provided defense counsel with status updates regarding the supplemental production on January 5, 6, 7, 9, 12, 14, 16, 20, and 30, noting in one telephone call shortly after Manavalan filed his motion for a continuance that "the timeline remained uncertain due to the size of the materials and the indeterminate processing time." Dkt. No. 103 at 2. During that time, AUSA Martin "confirmed at least every few workdays with [the USAO] litigation support team that the productions remained top priority and were being processed as rapidly as possible." *Id.* at 3.

The Government produced the previously undisclosed Oath files on January 16, 2026, "as soon as they were ready." *See* Dkt. No. 103-4 at 2. At that time, the Government stated in a letter that the Google files were taking longer to process because they were more voluminous, but those files would follow "as soon as possible." *Id.*

The Government produced the Google files from the two Gmail accounts on January 30, 2026. Dkt. No. 103 at 3. The late-produced emails from the Yahoo account numbered

ORDER DENYING MOTION TO DISMISS - 5

approximately 100,440 pages, and the late production from the Gmail accounts spanned approximately 299,120 pages. *See* Dkt. No. 101 at 1–2. Manavalan notes that while the emails in the Governments pre-2026 productions "largely involved taxpayers referenced in the indictment or the Special Agent Report," the newly disclosed emails identified at least 81 previously undisclosed taxpayers not previously identified in discovery." *Id.* at 3 (Yahoo/Oath production included communications with at least 54 previously undisclosed taxpayers, and Google production identified approximately 27 previously undisclosed taxpayers); *see also* Dkt. No. 104 at 7.

## C.    Procedural History

Trial was initially scheduled for February 20, 2024. Dkt. No. 6. On January 12, 2024, Manavalan filed an unopposed motion for a continuance to September 23, 2024 due to the unavailability of lead counsel Patrick Mullin, Dkt. No. 17, and the Court granted that request, Dkt. No. 20.

On July 8, 2024, the parties filed a stipulated motion to continue the trial date because AUSA David Martin anticipated being on parental leave from September 3 until October 28, 2024, and "Mr. Mullin was travelling abroad for much of December 2024 and ha[d] two trials, one of which [was anticipated to] last approximately six weeks, scheduled for May 2025." Dkt. No. 23 at 2–3. The parties stated that "[g]iven those other obligations and the complexity of this case, . . . the defense believes that the earliest they could be adequately prepared for trial, following AUSA Martin's parental leave, is in February or March of 2025," and requested a new trial date of March 10, 2025. *Id.* at 3. The Court granted the stipulated motion and continued the trial date until March 10, 2025. Dkt. No. 25.

In December 2024, Manavalan filed an unopposed motion for a third continuance, which the Court granted based on his representations that his counsel needed additional time to prepare

ORDER DENYING MOTION TO DISMISS - 6

for trial. Dkt. Nos. 28, 29. In June 2025, Manavalan filed an unopposed motion for a fourth continuance to continue trial to January 20, 2026, which the Court granted, again based on Manavalan's representation that his counsel needed additional time to prepare for trial. Dkt. Nos. 35, 36. Manavalan has remained released on bond for the duration of the case. Dkt. Nos. 6, 66.

On January 6, 2026, Manavalan filed an unopposed motion to continue the quickly approaching January 20, 2026 trial date based on the newly discovered emails. Dkt. No. 93. As of January 6, 2026, when Manavalan filed his motion, the "defense ha[d] not yet received the emails and files and underst[ood] that the IRS need[ed] another week to process and produce the discovery materials." *Id.* at 2. Manavalan waived his speedy trial rights through March 30, 2026. Dkt. No. 94 at 1–2. The Court granted the motion, scheduled the trial for March 16, 2026 as Manavalan requested, vacated all pretrial deadlines that had not yet passed, and ordered the parties to confer and file a proposed amended case schedule within seven days. Dkt. No. 96 at 3. The parties subsequently filed a stipulated motion for a scheduling order. Dkt. No. 97. The Court granted their motion in part, modifying the proposed deadlines for motions, responses, and replies related to new issues to allow the Court sufficient time to consider those motions before the pretrial conference. Dkt. No. 98.

On January 30, 2026, defense counsel sent AUSA Martin a letter stating that because of the late provided Google documents, the defense could not be prepared for trial by the March 16 trial date. Dkt. No. 103-5 at 2. The parties met on February 3 but were unable to agree on how to proceed. *See* Dkt. No. 103-6 at 2.

On February 9, 2026, Manavalan filed this motion to dismiss requesting that the Court dismiss the indictment because of the late-disclosed emails. Dkt. No. 100 at 1. In the alternative, Manavalan requests that the Court "prohibit the government from introducing at trial any emails seized by the [IRS] from two Google LLC email accounts . . . and one Yahoo email account with

ORDER DENYING MOTION TO DISMISS - 7

Oath Holdings LLC[.]" *Id.* Manavalan also asks that the Court "award fees and costs caused by the discovery violation." *Id.* The Government opposes the motion. Dkt. No. 102.

## II.    DISCUSSION

Manavalan contends that the Government's late email productions violated its disclosure obligations under both Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), resulting in actual prejudice and requiring dismissal, or in the alternative, meriting an order prohibiting the Government from introducing any of the late-produced discovery at trial. Dkt. No. 100 at 1, 4, 10. The Government admits that its failure to produce the documents before January 2026 violated Rule 16, but it disputes that the documents were *Brady* material or that Manavalan has been prejudiced. Dkt. No. 102 at 8–9. The Government also contends that the previously granted trial date continuance to March 16 has cured any prejudice and "no further relief is warranted." *Id.* at 2.

### A.    Legal Standard

A court may dismiss an indictment with prejudice "under either of two theories." *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008). First, a district court may dismiss an indictment "on the ground of outrageous government conduct if the conduct amounts to a due process violation." *Id.* (citation modified). Second, "if the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." *Id.* (citation modified). Here, Manavalan argues that the second theory applies, and that the Government's conduct prejudiced him. Dkt. No. 100 at 10–11; Dkt. No. 104 at 1–2.

Dismissal may be warranted under the second theory for three reasons: "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir.

2020) (quoting *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010)). However, "[a] court may dismiss an indictment under its supervisory powers only when the defendant suffers 'substantial prejudice,' *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988), and where 'no lesser remedial action is available,' [*United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991)]." *Chapman*, 524 F.3d at 1087.

Federal Rule of Criminal Procedure 16(a)(1)(E)(iii) requires the Government to "permit the defendant to inspect and to copy or photograph . . . papers, documents, data, . . . or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item was obtained from or belongs to the defendant." When a party fails to comply with Rule 16, the court may (1) order that party to permit the discovery or inspection and "prescribe other just terms and conditions;" (2) grant a continuance; (3) prohibit that party from introducing the undisclosed evidence; or (4) "enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2).

**B.     The Court Denies the Request for Dismissal**

Manavalan argues that the late disclosed emails with his clients "are exculpatory because they contain communications regarding information used in tax returns." Dkt. No. 100 at 4. He avers that the Government will argue at trial that he "intentionally prepared false returns in order to generate satisfied customers who would return year after year and refer others," so he "is entitled to introduce evidence that other returns prepared by the defendant were properly prepared and free of error." *Id.* at 4–5. Manavalan contends that the late disclosure has violated his right to a speedy trial, prejudiced his ability to present his theory of the case and conduct a meaningful investigation, and made it impossible to prepare by the current trial date. *Id.* at 8–10.

The Government responds by noting that it "acknowledges and regrets its true error: until January [2026], it inadvertently neglected to produce certain items 'obtained from or belong[ing]

to the defendant,' Fed. R. Crim. P. 16(a)(1)(E)(iii), and it mistakenly affirmed that it had done so earlier." Dkt. No. 102 at 9. However, the Government denies that there has been a *Brady* violation or resulting prejudice. *See id.* at 6–10.

1. There is No *Brady* Violation

Manavalan argues that dismissal is warranted under *Brady*. Dkt. No. 100 at 3. He notes that although the late-disclosed documents came from his own email accounts, and although he "retained access to his email accounts," he could not "reasonably recreate the materials seized by the government" because of their sheer volume. *Id.* at 7. Rather, it was the Government's obligation to disclose the material. *Id.* The Government does not dispute that it had—and failed to fulfill—an obligation to timely disclose the material under Rule 16, but it argues that the late production did not implicate *Brady*. Dkt. No. 102 at 8. It emphasizes that "[t]he defense provides not a single example of a document that they believe is exculpatory," and that the defense's averments on this issue are conclusory. *Id.*

"[S]uppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. A due process violation under *Brady* has three components: "(1) [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the government, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Cloud*, 102 F.4th 968, 975 (9th Cir. 2024) (citation modified). "Any evidence that would tend to call the government's case into doubt is favorable for *Brady* purposes." *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013). Evidence is favorable so long as it is "*potentially* exculpatory or impeaching." *United States v. Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013). "Evidence is

ORDER DENYING MOTION TO DISMISS - 10

'suppressed' when it is known to the government but not disclosed to the defendant." *Cloud*, 102 F.4th at 976.

The Government's obligations under Rule 16 and *Brady* are not coextensive. "Rule 16 is broader than *Brady*" because information that is not exculpatory or impeaching under *Brady* may still be relevant to developing a possible defense. *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019) (citation modified). In noting this distinction, the Court is not minimizing the Government's Rule 16 violation, which the Court does not take lightly. However, the Government's admitted Rule 16 violation does not automatically equate to a *Brady* violation.

As for whether the late disclosure violated the Government's *Brady* obligations, the Court agrees with the Government that Manavalan has not identified a single document in the late productions that is exculpatory. Even after the Government pointed out that shortcoming in its response, Dkt. No. 102 at 8, Manavalan did not identify any specific exculpatory or potentially exculpatory late-produced document in his reply brief, *see generally* Dkt. No. 104. His arguments that the late disclosure violated *Brady* are conclusory: he asserts that the documents "are exculpatory because they contain communications regarding information used in tax returns," Dkt. No. 100 at 4, and that the communications "involve charitable contributions, business expenses, rental income and expenses, securities basis adjustments, and foreign investments," *id.* at 8. However, as the Government notes, these facts are unsurprising in light of the nature of the documents—emails from Manavalan's tax business—and they "say[] nothing about whether Manavalan then falsified their returns; all twelve charged tax returns were falsified despite involving such communications." Dkt. No. 102 at 8–9. Manavalan also contends that "[o]n their face, these communications undermine the government's theory of motive and willfulness," but the Court cannot discern whether that is true since Manavalan does not attach any of the communications, nor does he do anything to establish how they undermine the Government's

theory. And even if all of the returns associated with the 81 or so previously undisclosed taxpayers were not fraudulent, the Government's theory has never been that Manavalan *always* submitted fraudulent returns, and 81 returns out of the 1,700 returns Manavalan normally submitted per year is not a large sample size. *See* Dkt. No. 47-2 at 4–5.

Manavalan's speculation that the late disclosed documents might include *Brady* material is insufficient to establish a *Brady* violation. *United States v. Lucas*, 841 F.3d 796, 802, 808 (9th Cir. 2016).

2.  There is No Substantial Prejudice, and a Lesser Remedy Cured—and Can Still Cure—Any Limited Prejudice

This leaves the question of the appropriate remedy for the Rule 16 violation. Again, dismissal is only appropriate when "the defendant suffers substantial prejudice and where no lesser remedial action is available." *Chapman*, 524 F.3d at 1087 (citation modified). Manavalan argues that the late productions have prejudiced him because (1) he was forced to seek a continuance of trial from January 2026 to March 16, 2026, and the "continuance itself constituted harm to Mr. Manavalan's right to a speedy trial and imposed additional financial and personal costs associated with extended pretrial proceedings," (2) the late disclosure prejudiced his trial defense that he "communicated extensively with clients and relied on information they provided," (3) his "investigation, expert analysis, witness preparation, and trial strategy would have developed differently" if the materials had been timely disclosed, particularly in light of the large number of newly identified taxpayers in the late production, and (4) it is impossible to meaningfully prepare for trial by the current trial date.  Dkt. No. 100 at 8–10.

Manavalan first argues that he was "forced" to seek a continuance in January 2026 because of the late disclosure, and that "continuance itself constituted harm to [his] right to a speedy trial[.]" *Id.* at 8. Manavalan is asserting this argument only in support of his claimed prejudice rather than

ORDER DENYING MOTION TO DISMISS - 12

arguing that his rights under Speedy Trial Act or the Sixth Amendment have been violated. *See id.* Nor could he make that argument in light of the fact that every time he requested a trial continuance—including most recently in January 2026—he filed a speedy trial waiver. *See* Dkt. No. 94 (waiving his speedy trial rights through March 30, 2026); *see also* Dkt. Nos. 17-1, 22, 35-3 (prior waivers); *United States v. Baker*, 63 F.3d 1478, 1497 (9th Cir. 1995) (where the time limits of the Speedy Trial Act have been met, there is a "strong presumption" of compliance with the Sixth Amendment); *cf. United States v. Govey*, 284 F. Supp. 3d 1054, 1064 (C.D. Cal. Mar. 1, 2018) (dismissing indictment when the Government made "belated and voluminous production of material documents" with only six days remaining for the Government "to bring the case to trial" under the Speedy Trial Act, leaving no lesser remedial action available). Indeed, only 25 days have elapsed on the speedy trial clock; even if Manavalan had not waived his speedy trial rights through the March 16, 2026 trial start date, trial would still occur within 70 non-excluded days of his arraignment. *See* Dkt. Nos. 6, 20, 25, 29, 36; *see also* 35-3 (waiving speedy trial rights through February 3, 2026). In addition, as the Government notes, Manavalan "remains at liberty, which limits the speedy trial concerns implicated." Dkt. No. 102 at 12 (citing *United States v. O'Dell*, 247 F.3d 655, 672 (6th Cir. 2001)). Certainly, it is problematic that the Government's late disclosure forced Manavalan to choose between going to trial on the scheduled date or seeking a continuance. Still, his argument on this issue fails to show that the two-month continuance has caused him *substantial* prejudice.

As for Manavalan's claimed prejudice to his theory of the case, Dkt. No. 100 at 8–10, the Government acknowledges that "knowing what the IRS seized could affect the defense's trial strategy," but notes that Manavalan has had "an itemized list of the seized emails since day one." Dkt. No. 102 at 6. The Government adds that all of the late-produced documents came from Manavalan's own business email accounts, to which he has had live access for the duration of this

case. *Id.* According to the Government, "Manavalan is uniquely situated to know the scope and nature of his client base and business emails." *Id.* The Court agrees with the Government that this issue does not demonstrate substantial prejudice. Manavalan has had the ability since the inception of this case to mine his own emails and files for material to support his planned defense that the tax returns he prepared were "free of error." Dkt. No. 100 at 5. He did not need the Government's productions to find documents within his own files on that issue. Rather, Manavalan was able to search his own files for documents that are exculpatory or otherwise support his planned defense, and as the Government notes, Dkt. No. 102 at 6, he "knew what to look for." Indeed, it was one of his planned trial exhibits (an email from his own files) that caused the Government to realize that it had inadvertently failed to produce all the seized emails. Dkt. No. 95-1 at 1–2. Moreover, Manavalan's arguments about prejudice to his theory of the case are conclusory: he complains that the late production prejudiced his trial defense without explaining how. Dkt. No. 100 at 8–9. "Projected or presumed prejudice" is insufficient to warrant dismissal of an indictment under the Court's supervisory powers. *United States v. Shetty*, No. 2:23-cr-00084-TL, 2025 WL 359742, at *1 (W.D. Wash. Jan. 31, 2025).

Manavalan also argues that he has suffered "investigative prejudice" because the late-produced documents identify numerous new taxpayers, and each one "represents a potential witness, investigative lead, and source of exculpatory context." Dkt. No. 100 at 9–10; *see also* Dkt. No. 101 at 3 (noting that the Yahoo production included "54 taxpayers not previously identified in discovery" and the Gmail production identified 27 additional taxpayers). The Government responds that "[t]he defense has had multiple avenues of access to the disputed files and an index itemizing what the government seized since the outset of this case" in December 2023 and January 2024. Dkt. No. 102 at 6; *see also id.* (citing Dkt. No. 95-1 at 3). According to the Government, Manavalan could have used these indices and his live access to his email accounts to view the files.

ORDER DENYING MOTION TO DISMISS - 14

*Id.* at 7. To this, Manavalan replies that such access does not establish the absence of prejudice because he could not "recreate the scope of what the government seized pursuant to the search warrants, which ultimately encompassed approximately 172,000 emails and attachments across multiple years." Dkt. No. 104 at 4 (quoting Dkt. No. 101 at 2).

Although Manavalan could not recreate exactly what the IRS seized before receiving the late productions, Dkt. No. 101 at 2, he was able to conduct "targeted searches for identified taxpayers" before the late productions. *Id.* at 3. He also acknowledges that the Government previously produced the emails regarding taxpayers referenced in the indictment or the Special Agent Report. *Id.* Although the late productions include communications with additional "taxpayers not previously identified in discovery," *id.*, Manavalan could have used the indices that the Government produced to locate the records in his own files, Dkt. No. 102 at 6. Accordingly, the Court finds that Manavalan has not suffered substantial prejudice from the late disclosures.

Moreover, even if Manavalan has suffered some prejudice from the late disclosures and need to investigate the new taxpayers late in the process, the "lesser remedial action, namely the continuance of the trial that the court has already granted, is sufficient remedy." *United States v. Reid*, 553 F. Supp. 3d 882, 893 (W.D. Wash. 2021). The Government argues that "[a]ny prejudice from the timing of [its] production was remedied by the unopposed continuance that the defense requested and obtained last month." Dkt. No. 102 at 6; *see also id.* at 9-12. The Government also contends that "to the extent [the defense] detrimentally relied on the government's mistaken representation that all of the seized emails had been produced, the continuance has afforded them additional time to review the full seized database for strategy-altering documents." *Id.* at 7. It adds that the defense "provide[s] no examples of such documents or detail on how they alter strategy in a manner that cannot be incorporated by March 16." *Id.*

ORDER DENYING MOTION TO DISMISS - 15

Manavalan's counsel avers that "[t]he government's failure to disclose the required discovery in a timely manner materially affected the defense investigation, expert analysis, and defense strategy," and that "[a]t this point, it is not possible to complete these essential functions before the March 16, 2026, trial date." Dkt. No. 101 at 4. However, counsel does not elaborate on that point, nor does Manavalan move for an additional continuance. *See id.* And as the Government notes, Dkt. No. 102 at 10, Manavalan sought the trial continuance to March 16 just last month, and at that time, his counsel stated that a March trial date was "realistic and prudent." Dkt. No. 93 at 2, 6. Although Manavalan now argues that the Government made supplemental productions later than promised, the record does not reveal a promise but rather a statement by AUSA Martin on January 6, 2026—the same day Manavalan filed his unopposed motion for a continuance—that he was "optimistic" that the Government would have the documents produced "next week." Dkt. No. 105-1 at 2. Again, "next week" would have been by Friday, January 16. The Government produced the Yahoo emails on January 16. Dkt. No. 103-4 at 2. Although the Google production, which was larger, was not produced until January 30, Dkt. No. 103 at 3, Manavalan has not shown that that additional two-week delay beyond what he was expecting when he sought the continuance caused him "substantial prejudice" or rendered the continued trial date unworkable. To the contrary, as the Government notes, Dkt. No. 102 at 7, Manavalan has not provided any specific example of late disclosed "strategy-altering documents" that cannot be incorporated into Manavalan's trial strategy by March 16. In sum, Manavalan has not shown that continuance previously granted by the Court is insufficient to cure any prejudice resulting from the late disclosure.

Finally, even if the defense now believes that the already provided continuance has left it with insufficient time to prepare for trial, another continuance is an available "lesser remedial action" that would cure the prejudice. *Chapman*, 524 F.3d at 1087; *see also United States v. Gatto*, 763 F.2d 1040, 1049 (9th Cir. 1985) (where defendants were "put into a difficult position" by the

ORDER DENYING MOTION TO DISMISS - 16

government's announcement four weeks before trial that it had 382 items it planned to introduce into evidence, the district court "could have considered more searchingly whether a continuance was appropriate under the circumstances"); *Shetty*, 2025 WL 359742, at *2. Based on Manavalan's prior representations to the Court that the defense could review the additional discovery and be prepared for trial by March 16, 2026, Dkt. No. 93 at 5–6, and given his current representations that the Government's two- to three-week delay in producing the additional discovery has made it impossible for the defense to be prepared for trial by March 16, 2026, any additional continuance would be—at most—two to three weeks.[2] Because 45 days remain on the speedy trial clock, a continuance of three weeks would still permit trial to occur within 70 non-excluded days of Manavalan's arraignment.

Accordingly, the Court denies Manavalan's request to dismiss the indictment.

**C.    The Court Denies the Request for Exclusion**

Manavalan argues that if the Court declines to dismiss the indictment, "it should prohibit the government from introducing at trial any emails seized from Mr. Manavalan's Google or Oath/Yahoo accounts." Dkt. No. 100 at 11. He further contends that "[e]xclusion is a well-established remedy for prejudicial discovery violations and is particularly appropriate where the government's failure concerns evidence it has long possessed and selectively produced." *Id.*

The Government responds that exclusion is unwarranted because its failure to produce the documents sooner was "inadvertent," not tactical, and promptly mitigated. Dkt. No. 102 at 11–12. The Government also argues that Manavalan's requested relief—exclusion of all the Yahoo and Gmail files—is overbroad because it would exclude documents the Government "produced long ago." *Id.* at 12.

---

[2] Again, Manavalan has not moved for a continuance, but he is free to do so, including on an expedited basis.

ORDER DENYING MOTION TO DISMISS - 17

Neither party cites helpful authority on this issue. Manavalan relies on *United States v. Garcia*, Dkt. No. 100 at 11, but that case involved the "the government's untimely disclosure of evidence in violation of a specific discovery order," *United States v. Garcia*, 730 F. Supp. 2d 1159, 1164 (C.D. Cal. 2010), which is not the circumstance here. For its part, the Government relies on *United States v. Finley*, which held that "[e]xclusion is an appropriate remedy for a discovery rule violation only where the *omission* was willful and motivated by a desire to obtain a tactical advantage." Dkt. No. 102 at 11 (quoting *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002) (citation modified)). But both *Finley* and the case on which it relied—*Taylor v. Illinois*, 484 U.S. 400, 415 (1988)—involved potential exclusion of the *defendant's* evidence rather than the Government's evidence. The Ninth Circuit has stated that "*Finley*, . . . like *Taylor*, involved a defendant's right to present evidence, not the government's, and has no bearing" when the issue is the potential exclusion of the Government's evidence. *United States v. Grace*, 526 F.3d 499, 515 (9th Cir. 2008); *see also United States v. Barber*, No. 3:19-cr-00093-TMB, 2020 U.S. Dist. LEXIS 160550, at *7 n.32 (D. Alaska Sept. 2, 2020) ("The Ninth Circuit has stated that *Finley* has no bearing where the government's proffered evidence is at issue." (citation modified)).

"The trial court should not impose a sanction harsher than necessary to accomplish the goals of Rule 16." *United States v. Gee*, 695 F.2d 1165, 1169 (9th Cir. 1983). Thus, "violations of Rule 16 do not inevitably require that the trial court exclude the evidence not timely provided." *United States v. Chanet*, 855 F.2d 863, at *1 (9th Cir. 1988). "Suppression of evidence must be viewed as an undesirable remedy for a discovery violation" and should be "reserved for cases of incurable prejudice or bad faith conduct demanding punishment by the court." *United States v. Collins*, 799 F.3d 554, 573 (6th Cir. 2015) (citation modified). When the Government "appears merely to have made an error," courts "will not presume an ill intent." *Chanet*, 855 F.2d 863, at *2. And where the trial court finds that the Government's violation "did not result from its bad

ORDER DENYING MOTION TO DISMISS - 18

faith and that a less drastic remedy (such as a continuance) will mitigate any unfair prejudice," the "severe sanction" of exclusion "would seldom be appropriate." *United States v. Marshall*, 132 F.3d 63, 70 (D.C. Cir. 1998); *see also United States v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002) ("It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings."). "In considering the feasibility of curing Defendants' prejudice through a continuance, the court should consider whether a continuance will effectively cure the unfair surprise suffered as a result of the Government's delayed disclosure." *Golyansky*, 291 F.3d at 1250.

Here, Manavalan's proposed exclusion of all the seized Yahoo and Gmail emails is harsher than necessary to accomplish the goals of Rule 16. *See, e.g.*, *Golyansky*, 291 F.3d at 1250 (reversing district court's exclusion of a Government witness as a discovery sanction for late-produced impeachment evidence because a continuance could have cured the prejudice to defendants); *United States v. Sterling*, 724 F.3d 482, 513 (4th Cir. 2013) (reversing district court's striking of two witnesses as "too severe a response to [prosecutorial] conduct that was not undertaken in bad faith, that can be remedied with a continuance, and that is unlikely to be repeated"); *United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir. 1986) (where there was no bad faith by the Government in failing to produce discovery earlier, a continuance to allow defense counsel time to review the discovery and prepare for trial was appropriate). Manavalan has not proposed an alternate narrower remedy. *See generally* Dkt. Nos. 100, 104. Furthermore, the Court has already granted a remedy—the trial date continuance—as permitted by Rule 16(d)(2). As set forth above, that continuance—granted at Manavalan's request—should suffice to cure any prejudice. *See Marshall*, 132 F.3d at 70 (stating that "[o]rdinarily, a continuance is the preferred sanction for a discovery delay because it gives the defense time to alleviate any prejudice it may have suffered from the late disclosure"). To the extent it does not, as discussed above, Manavalan

ORDER DENYING MOTION TO DISMISS - 19

is free to seek another continuance based on the Government's two- to three-week delay in turning over the additional Google discovery.

Although the Government's failure to produce a portion of the seized Yahoo and Gmail emails until January 2026 was a serious omission, it was not willful or the product of bad faith. Rather, the Government did not learn that some of the seized emails had not been produced until January 1, 2026, and when it learned of the omission, it promptly took steps to investigate, alert defense counsel, and produce the documents. *See* Dkt. No. 95-1 at 1–3; Dkt. No. 103 at 2–3. Under these circumstances, the Court finds that exclusion is unwarranted. *See United States v. Sams*, No. 4:19-cr-15, 2019 WL 3023746, at *3 (S.D. Ga. July 10, 2019) (declining to exclude late disclosed evidence when the untimely disclosure "did not evince any bad faith or dilatory motive on the part of the Government").

**D.      The Court Denies the Request for Fees**

Manavalan also argues that "the Court should award [him] his reasonable attorney's fees and costs incurred as a direct result of the government's discovery violation." Dkt. No. 100 at 12. He notes that although Rule 16(d) does not provide for this relief, the Court can award monetary sanctions under its supervisory powers "when discovery violations rise to the level of constitutional infractions, such as *Brady* violations." *Id.* (citing *Cloud*, 102 F.4th at 981–82). He also avers that the Government's late disclosure "required the defense to seek a continuance, to review and analyze massive late productions, to reassess trial strategy, and to undertake new investigative efforts involving previously undisclosed taxpayers." *Id.* The Government responds that its "error was not of constitutional magnitude," the continuance "cured any possible prejudice," and *Cloud* is inapposite. Dkt. No. 102 at 12–13.

True enough, "[s]overeign immunity does not bar a court from imposing monetary sanctions under an exercise of its supervisory powers." *Cloud*, 102 F.4th at 981–82 (quoting *United*

ORDER DENYING MOTION TO DISMISS - 20

*States v. Woodley*, 9 F.3d 774, 782 (9th Cir. 1993)). "These powers are judicially created to remedy a violation of recognized statutory, procedural, or constitutional rights, and to deter future governmental misconduct and protect the integrity of the judicial process." *Woodley*, 9 F.3d at 782 (citation modified). However, Rule 16 cannot serve as the basis to impose sanctions because it provides specific remedies for violation of its provisions. *Id.*

As set forth above, the Court has not found a *Brady* violation, and any resulting prejudice has been cured—or can be cured—by a continuance within the speedy trial window. In addition, as the Government notes, most of the costs that Manavalan identifies related to reviewing and investigating the new productions "stem from the fact—not the timing—of the production." Dkt. No. 102 at 13. That is, Manavalan would have incurred the review and investigation, with the same resulting costs, if the defense team had received the productions earlier. Any costs incurred in seeking the unopposed continuance to March 2026 were likely minor. Finally, the facts surrounding the Government's late disclosure here bear no resemblance to the facts in *Cloud*, where the defense learned "[i]n the midst of a complicated five-body homicide trial" that the Government failed to turn over evidence, "[t]he defense did not learn of this [evidence] from the Government," and the late disclosure violated the defendant's *Brady* rights. *Cloud*, 102 F.4th at 971. Under the very different facts here, the Court declines to impose monetary sanctions.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES Manavalan's Motion to Dismiss the indictment and for other relief. Dkt. No. 100.

Dated this 28th day of February, 2026.

Lauren King
United States District Judge

ORDER DENYING MOTION TO DISMISS - 21