UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>THANJAVUR MANAVALAN,<br><br>Defendant. | CASE NO. 2:23-cr-00192-LK<br><br>ORDER DENYING MOTION FOR ACQUITTAL |

This matter comes before the Court on Defendant Thanjavur Manavalan's Motion for Judgment of Acquittal. Dkt. No. 171. Manavalan contends that there is insufficient evidence to sustain a conviction on Counts 2 and 11. *Id.* at 8. The Government opposes the motion. Dkt. No. 173. For the reasons set forth below, the Court denies the motion.[1]

## I.    BACKGROUND

In December 2023, Manavalan was indicted on 14 counts of Aiding and Assisting in the Preparation and Presentation of a False and Fraudulent Return in violation of 26 U.S.C. § 7206(2)

---

[1] Because the Court finds that the record is sufficient to decide the matter, the Court denies Manavalan's request for oral argument. Dkt. No. 171 at 1.

for actions occurring between March 2019 and April 2021. Dkt. No. 1 at 1–3. Before trial, the Government moved to dismiss Counts 13 and 14 related to taxpayer D.Y., and the Court granted that unopposed motion. Dkt. Nos. 67–68. Manavalan moved for acquittal under Federal Rule of Criminal Procedure 29(a) at the close of the Government's case, and the Court denied that motion. Dkt. No. 145.

On March 27, 2026, the jury returned its verdict in this case. Dkt. No. 159. The jury found Manavalan guilty on Counts 2, 11, and 12, and not guilty on Count 6. *Id.* at 1–5. The jury could not reach a verdict as to the other Counts, and the Court declared a mistrial on those Counts. *Id.*; Dkt. No. 148.

## II.  DISCUSSION

Manavalan contends that with respect to Count 2 (taxpayer H.P.) and Count 11 (taxpayer S.R.), "the government's proof did not permit a rational juror to find willfulness beyond a reasonable doubt." Dkt. No. 171 at 2. The Government responds that the motion should be denied because it presented substantial evidence of willfulness at trial. Dkt. No. 173 at 1.

### A.    Legal Standard for Rule 29 Motions

A defendant may move for acquittal within 14 days after a guilty verdict, and the Court may "set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). The test for evaluating a Rule 29 motion for acquittal is the same as for a challenge to the sufficiency of the evidence. *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010).

In evaluating a motion for acquittal, courts engage in a two-step process. First, they consider "the evidence presented at trial in the light most favorable to the prosecution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). This means that a court "may not usurp the role of the finder of fact by considering how it would have resolved [factual] conflicts, made the inferences, or considered the evidence at trial." *Id.* Here, courts must presume that the

ORDER DENYING MOTION FOR ACQUITTAL - 2

jury "drew all reasonable inferences in the prosecution's favor[.]" *United States v. Goyal*, 629 F.3d 912, 915 (9th Cir. 2010). "A reasonable inference is one that is supported by a chain of logic." *United States v. Rodriguez*, 790 F.3d 951, 957 (9th Cir. 2015) (citation modified).

Second, courts "determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" *Nevils*, 598 F.3d at 1164 (alteration and emphasis in *Nevils*) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Although "[m]ore than a mere modicum of evidence is required to support a verdict," a reviewing court "may not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt[.]" *Id.* (citation modified). Rather, a court "must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." *Id.* at 1165.

## B.      Legal Standard for Willfulness

The Court instructed the jury that among other elements, the Government was required to prove beyond a reasonable doubt that Manavalan "acted willfully." Dkt. No. 146 at 23. It further instructed the jury that "[t]o prove that Mr. Manavalan acted 'willfully,' the government must prove beyond a reasonable doubt, separately as to each count, that he knew federal tax law imposed a duty on him not to aid, assist, advise, procure, or counsel the preparation of a false income tax return, and he intentionally and voluntarily violated that duty." *Id.* at 25. In addition, if Manavalan "acted on a good faith misunderstanding as to the requirements of the law, he did not act willfully even if his understanding of the law was wrong or unreasonable." *Id.* Accordingly, the Government had to "prove beyond a reasonable doubt that [Manavalan] did not have a good faith belief that he was complying with the law." *Id.* Manavalan does not claim any error based on these instructions,

*see generally* Dkt. No. 171, which were based on Ninth Circuit Model Criminal Instructions 22.4 and 22.6.

Willfulness "requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). That is, the Government must prove that the defendant acted with "with specific intent to defraud the government in the enforcement of its tax laws." *United States v. Salerno*, 902 F.2d 1429, 1432 (9th Cir. 1990). Willfulness does not encompass accidents or mistakes, and it "requires more than a showing of careless disregard for the truth." *United States v. Pomponio*, 429 U.S. 10, 12 (1976). This standard includes "knowledge that the taxpayer should have reported more income than he did." *Id.* (citation modified). With alleged tax preparer fraud, willfulness is established when the tax preparer "knew of his duty not to defraud the IRS" and "the evidence was sufficient for a rational jury to conclude [the tax preparer] lacked a good-faith belief that he was not violating any of the provisions of the tax laws." *United States v. Kellogg*, 955 F.2d 1244, 1248 (9th Cir. 1992) (citation modified).

Because direct proof of "intent to evade taxes is rarely available," willfulness may be inferred "from all the facts and circumstances of the attempted understatement of tax." *United States v. Conforte*, 624 F.2d 869, 875 (9th Cir. 1980). For example, courts may consider "substantial similarities connecting the misstatements in [one] return with those in other returns prepared by [the defendant]." *United States v. Hayes*, 322 F.3d 792, 798 (4th Cir. 2003). The *Hayes* court also explained that where different numbers were reported to the IRS from those in the records the taxpayers gave to the tax preparer, "[i]n light of the general reliability of business records and the substantial similarities between the errors on [one client's] returns and false deductions noted on other returns prepared by [the defendant], a jury could reasonably conclude that [the defendant] fabricated the incorrect figures[.]" *Id.* at 799; *see also United States v. Goosby*,

ORDER DENYING MOTION FOR ACQUITTAL - 4

523 F.3d 632, 637 (6th Cir. 2008) (finding that "the similarity in the type of false deductions claimed on most of the tax returns is strong circumstantial evidence that the defendant willfully submitted tax returns containing false statements").

In this case, Manavalan does not contend that the Government failed to prove (1) that the law imposed a duty on him as a tax preparer or (2) that he knew of this duty. *See generally* Dkt. No. 171. Accordingly, the Court focuses on whether he "voluntarily and intentionally violated that duty." *Cheek*, 498 U.S. at 201.

**C.     The Evidence Was Sufficient to Support a Conviction on Count Two**

In Count 2, the Government alleged that in taxpayer H.P.'s 2020 tax return, Manavalan willfully included a false $213,485 Security Loss, and willfully omitted $2,206 in wash sales. Dkt. No. 1 at 2. The Indictment alleged that Manavalan knew that H.P. "not entitled to claim deductions in the claimed amounts, which resulted in reduction of the taxpayer's taxable income and the taxpayer receiving credits for which they were ineligible." *Id.* The Government's accounting for both the security loss and the wash sale adjustment resulted in a total adjustment amount of $215,691. Ex. 103 (Computation of Falsely Claimed Amounts).[2] The Government calculated that if the return had been prepared correctly, the additional tax due for H.P. for tax year 2020 was $37,122. Ex. 104 (Computation of Corrected Tax Liability).

1.   The Security Loss

Form 8949 of H.P.'s 2020 tax return prepared by Manavalan claimed a $213,485 security loss amount under a "VARIOUS INV" line item. Ex. 6 at 14; Cherkashin 3/23 Tr. at 55. Form 8949 "provides detail for Schedule D," which is the form that shows capital gains and losses. Cherkashin 3/23 Tr. at 26, 28–29. Some types of losses are deductible from otherwise taxable

---

[2] All references to the trial transcript as "Tr." herein refer to the rough draft transcript.

income. *Id.* at 27. As relevant here, Agent Cherkashin testified that a taxpayer could claim a security loss for non-business bad debt if the taxpayer extended a loan—not a gift—and that loan became "completely worthless" within the relevant tax year. *Id.* at 47–48. Gifts to family or friends—made with an understanding that they may not be repaid—cannot be claimed as a loss on Schedule D, while a "completely worthless debt" from a "true debtor creditor relationship" can be deductible. *Id.* at 47, 56–57. Supporting such a worthless debt requires the attachment of "a statement to the return that contains a description of the debt," including "the amount, date the debt is due or repayment date[, t]he name of the person who owes money, any relationship, either family or business, between the person who advances the money and the person who borrows the money," and "the efforts that were made to collect the debt." *Id.* at 48. Agent Cherkashin did not see any documentation explaining what the VARIOUS INV line item referred to in H.P.'s return. *Id.* at 55.

Manavalan contends that the Government presented insufficient evidence that the $213,485 Security Loss reflected in the "VARIOUS INV" line that he included in H.P's 2020 return was willfully inaccurate. Dkt. No. 171 at 10. He asserts that H.P. "testified that he had in fact sent substantial money to parents and friends in India for investment purposes; expected repayment; discussed those facts with Mr. Manavalan during the tax-preparation call; and by early 2021 believed he would not be repaid." *Id.* (internal citations omitted). Manavalan also notes that H.P. testified that the "details of those transfers were discussed with Mr. Manavalan and that he trusted Mr. Manavalan to translate the information into a proper tax return." *Id.* According to Manavalan, there was a basis for the VARIOUS INV line, particularly because H.P. "could not pin down exact numbers." *Id.*

The Government responds that H.P. testified that he did not know where the $213,485 number listed on his tax return came from. Dkt. No. 173 at 10 (citing Dkt. No. 165 at 23–24). The

ORDER DENYING MOTION FOR ACQUITTAL - 6

Government avers that in light of that testimony, the jury could reasonably infer that Manavalan "may instead have invented this number." *Id.* (quoting *Hayes*, 322 F.3d at 798). The Government also responds that the relevant evidence spans more than H.P's own testimony; it includes "all the facts and circumstances," including "Manavalan's own statements, testimony from Manavalan's employees and other taxpayers, testimony from IRS agents, and the underlying documents." *Id.* at 9. The Government asserts that multiple other taxpayers had "VARIOUS INV" lines in the tax returns Manavalan prepared for them, and they testified that they "did not provide the number that was ultimately listed on their tax returns." *Id.* at 10–11 (citing R.S. Tr. at 18–19, 51; V.J. 3/18 Tr. at 19–20; V.J. 3/19 Tr. at 62–63; R.V. Tr. at 17–18; R.K.P. Tr. at 13–17; S.D. Tr. at 16–17; A.G. Tr. at 15–17). According to the Government, the "'substantial similarities between the errors' on H.P.'s return and 'false deductions noted on other returns' would allow a jury to 'reasonably conclude' that Manavalan 'fabricated the incorrect figures.'" *Id.* at 11 (quoting *Hayes*, 322 F.3d at 798). The Government also asserts that the experience of the undercover agent supports a finding of willfulness because it shows that Manavalan "manipulated items on tax returns to improve tax outcomes for his clients." *Id.* at 11–12.

The Government also notes that Manavalan stated during his recorded interview that when preparing a Schedule D for capital gains and losses, he would obtain a form 1099-B from the client, and would correct any errors recorded by his employees on the client's Schedule D. *Id.* at 9 (citing Ex. 96 at 20–22, 29–30, 33). His employees confirmed this practice. *Id.* (citing Gurunathan Tr. at 15–16, 25–26, 53–54; Tekumalla 3/19 Tr. at 33; Tekumalla 3/20 Tr. at 8–10, 23).[3]

And finally, the Government argues that although it was not required to "establish a particular motive in order to prove willfulness," the evidence established a motive. *Id.* at 12.

---

[3] Manavalan was the only one at his firm who filed tax returns; his employees did not do so. Ex. 96 at 14–15.

ORDER DENYING MOTION FOR ACQUITTAL - 7

Taxpayers hired Manavalan based on word of mouth, and he grew his business (and correspondingly, his revenue) by obtaining better results tax results for his clients. *Id.*

The Court finds that the evidence was sufficient to support the jury's finding of willfulness regarding the security loss on H.P.'s return. Manavalan argues that there was merely a "mismatch" between H.P's estimated $100,000 loan to his family and the $213,485 security loss Manavalan included on his tax return. Dkt. No. 172 at 5. However, viewing the evidence in the light most favorable to the prosecution, the jury could have reasonably inferred that Manavalan "invented this number," *Hayes*, 322 F.3d at 798, in light of H.P.'s testimony that he did not know where the $213,485 number Manavalan listed on his tax return came from and that the listed number was substantially more than the "$100,000 range" H.P. discussed with Manavalan. Dkt. No. 165 at 23–24. In addition, the finding of willfulness is supported by the testimony of Manavalan's other tax clients, who testified that Manavalan added "VARIOUS INV" deductions to their tax returns that were not consistent with the information they provided to him. R.S. Tr. at 18–19, 51; V.J. 3/18 Tr. at 19–20; V.J. 3/19 Tr. at 62–63; R.V. Tr. at 17–18; R.K.P. Tr. at 13–17; A.G. Tr. at 15–17. Some of the other taxpayers testified that that they did not tell Manavalan that they had made loans at all, let alone lost money on them. R.V. Tr. at 17–18; A.G. Tr. at 15–16. The "substantial similarity" between the circumstances surrounding the inclusion of unsupported "VARIOUS INV" entries in their returns and H.P.'s 2020 return supports a finding of intentionality and willfulness on Manavalan's part. *Hayes*, 322 F.3d at 798; *Goosby*, 523 F.3d at 637.

Finally, the experience of the undercover agent supports a finding of willfulness. That agent testified that based on the tax documents he provided to Manavalan, he would have owed money to the IRS based on a properly completed return. Mand Tr. at 5, 10. However, the return Manavalan prepared for him would have entitled him to a tax refund of over $1,000, again based in part on losses recorded in the "VARIOUS INV" line that Agent Mand had not communicated to

ORDER DENYING MOTION FOR ACQUITTAL - 8

Manavalan. *Id.* at 30–33. His experience, along with those of the other taxpayers, supported an inference that Manavalan intentionally included unsupported items in his clients' tax returns to reduce their tax burdens. The evidence was thus sufficient to allow a "rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Nevils*, 598 F.3d at 1164.

2. The Wash Sale

The Government also alleged that Mr. Manavalan purposefully omitted a wash sale adjustment to H.P.'s short-term Fidelity investments, totaling $2,206. Dkt. No. 1 at 2; *see also* Ex. 7 at 5 (reflecting "Wash Sale Loss Disallowed"). A wash sale is the sale of a security—typically a stock—at a loss where the taxpayer purchased the same security within 30 days before or after the sale. Cherkashin 3/23 Tr. at 52–53. The loss is not allowed as a current deduction; rather, the loss is deferred to a later date when the taxpayers disposes of the asset, as long as the later disposal is not another wash sale. *Id.* at 53. H.P.'s 2020 Fidelity brokerage statement reflected a wash sale of $2,206.40 that was disallowed and should have been reported on his Form 8949 and Schedule D. *Id.* at 51–52, 55. However, that number was not reported on the tax return Manavalan prepared. *Id.* at 52.

The Government notes that Manavalan did not address the wash sale issue in his motion, and that issue is an independent basis for conviction on Count 2. Dkt. No. 173 at 11 n.1. The Government also asserts that the evidence was sufficient to support conviction on this count. *Id.* at 11. As with the securities losses, the Government argues that the similarities in the omitted wash sales on H.P. and S.R.'s returns supported a finding of willfulness because they both had wash sales listed on their brokerage statements that were left off of their returns even though they did not ask Manavalan to omit those sales. *Id.* (citing Dkt. No. 165 at 15–16, 25, 38; Dkt. No. 166 at 10–14, 14–15). The Government further avers that in addition to H.P. and S.R., "taxpayers V.J., R.V., S.D., and L.T. testified about missing wash sales on their tax returns." Dkt. No. 173 at 5

ORDER DENYING MOTION FOR ACQUITTAL - 9

(citing V.J. 3/18 Tr. at 14, 20–21; R.V. Tr. at 26–27, 29, 33–34; S.D. Tr. at 14–15; Dkt. No. 167 at 17–19, 23–24). Moreover, the Government asserts, and Manavalan does not dispute, that he knew the rules requiring reporting wash sales (and the other tax items at issue in this case) and correctly recorded certain wash sales involved in Count 12, "demonstrating his understanding of the disallowed wash sales requirement." *Id.* at 9–10 (citing Dkt. No. 167 at 15, 17).

In his reply brief, Manavalan does not discuss his failure to address this issue in his motion. *See* Dkt. No. 172 at 5–6. Instead, he argues for the first time that the wash sales omission reflects "an error in processing lengthy brokerage documents" rather than fraud. *Id.* at 6.

"[T]he general rule is that [litigants] cannot raise a new issue for the first time in their reply briefs." *United States v. Birtle*, 792 F.2d 846, 848 (9th Cir. 1986) (quoting *Thompson v. Comm'r*, 631 F.2d 642, 649 (9th Cir. 1980)). "The unfairness of such a tactic is obvious. Opposing counsel is denied the opportunity to point to the record to show that the new theory lacks legal or factual support." *Sophanthavong v. Palmateer*, 378 F.3d 859, 872 (9th Cir. 2004). It was therefore improper for Manavalan to raise this new argument for the first time in his reply. However, even if the Court were to consider it, it would still agree with the Government.

The evidence was sufficient to support the conviction against Manavalan based on the omitted wash sale on H.P.'s tax return. Manavalan stated in his interview that he reviewed his clients' documents and corrected any errors his employees made in inputting the data in the tax preparation software. Ex. 96 at 23, 27, 37. One of Manavalan's employees, Manasa Tekumalla, testified that there was a specific column for "wash sales" in the software they used at Mano Accounting Services, and if the brokerage included the wash sale in the client's 1099-B, she inputted the number into the software. Tekumalla 3/19 Tr. at 33. Manavalan would then check his employees' work. *Id.* at 37–38. H.P.'s testimony establishes that he provided brokerage statements to Manavalan, he expected to receive accurate tax advice, and he did not ask Manavalan to alter

ORDER DENYING MOTION FOR ACQUITTAL - 10

any numbers from his brokerage statements on his return. Dkt. No. 165 at 10, 24–25. As with the security loss issue, the "substantial similarity" between Manavalan's omission of wash sales from H.P's return and his other clients' returns supports a finding of intentionality and willfulness on Manavalan's part. *Hayes*, 322 F.3d at 798; *Goosby*, 523 F.3d at 637; *see also* Dkt. No. 166 at 10–15 (S.R. testifying that he sent his brokerage statements to Manavalan, Manavalan omitted wash sales from his return, Manavalan did not discuss the wash sales with him, and S.R. did not ask Manavalan to make any changes from the numbers in his brokerage statements to what was on his tax return); V.J. 3/18 Tr. at 14, 20–21 (V.J. testifying that he provided brokerage documents to Manavalan, Manavalan did not include a wash sale in his return, and V.J. did not provide Manavalan any reason not to include the wash sale in his return); R.V. Tr. at 26–27, 29, 33–34 (R.V. testifying that he provided his brokerage statements to Manavalan, Manavalan omitted a wash sale from his return, and he did not ask Manavalan to omit the sale); S.D. Tr. at 14–15 (S.D. testifying that he provided brokerage statements to Manavalan and Manavalan omitted a wash sale from his tax return); Dkt. No. 167 at 16–19, 23–24 (L.T. testifying he provided his and his wife's brokerage statements to Manavalan; Manavalan included some wash sales on their returns but failed to include others). In addition, here again, the testimony of the undercover agent supports a finding of willfulness as set forth above. The evidence was thus sufficient to allow a "rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Nevils*, 598 F.3d at 1164.

**D.      The Evidence Was Sufficient to Support a Conviction on Count Eleven**

In Count 11, the Government alleged that Manavalan falsely omitted wash sales in the amount of $848,927 from taxpayer S.R.'s 2018 tax return. Dkt. No. 1 at 2. Manavalan did not include large wash sale figures from S.R.'s Fidelity brokerage statements on S.R.'s Form 8949 in his tax return. Ex. 53 at 25.

ORDER DENYING MOTION FOR ACQUITTAL - 11

Manavalan contends that S.R.'s testimony was insufficient to show willfulness, as opposed to a mere omission or mistake. Dkt. No. 171 at 11. He asserts that S.R.'s testimony demonstrated that Manavalan never suggested not reporting something to the IRS, S.R. was a "high-volume trader, with millions of dollars in transactions," and S.R. "had a long-standing professional relationship with Mr. Manavalan over multiple years, met with him in person, and reviewed documents with him," undermining any assumption that Manavalan was "inventing numbers for a one-off scheme to omit wash sale entries." *Id.* at 11–12. Manavalan further argues that the Government relied on "detailed pages deeper in the long brokerage statements," whereas "the Fidelity summary pages contained realized gain/loss figures that matched the loss figures reported on the return[.]" *Id.* at 11.

The Government responds that S.R. testified that he provided his tax documents to Manavalan, he trusted Manavalan to correctly prepare his taxes, and he did not ask Manavalan to change any of the numbers listed in his brokerage statements. Dkt. No. 173 at 4 (citing Dkt. No. 166 at 5–6, 10, 14–15, 33). And as set forth above, other taxpayers testified about similarly missing wash sales on their tax returns, including V.J., R.V., S.D., and L.T. *Id.* at 5.

The evidence is sufficient to show that Manavalan willfully omitted wash sales from S.R.'s return. In addition to H.P.'s testimony, the same evidence set forth above regarding Count 2 supports willfulness regarding the omitted wash sales in Count 11, including the testimony from other taxpayers about similarly omitted wash sales, Manavalan's knowledge of the wash sale requirements, the fact that his company software included a line entry for wash sales, the testimony of the undercover agent, and Manavalan's motive to decrease the tax burden to his clients to grow his business.[4] All of this provided "strong circumstantial evidence" that Manavalan intentionally

---

[4] Agent Schneider testified that Manavalan's number of clients, and correspondingly his revenue, steadily increased between tax years 2018, 2019, and 2020, the three tax years involved in this case. Schneider 3/24 Tr. at 41–43.

ORDER DENYING MOTION FOR ACQUITTAL - 12

omitted these numbers, *Goosby*, 523 F.3d at 637, and would allow a jury to "reasonably conclude" that Manavalan "fabricated the incorrect figures," *Hayes*, 322 F.3d at 799.

In his reply brief, Manavalan argues that it "is entirely plausible" that he may have prepared S.R.'s return from "summary figures" rather than the more detailed portions of the brokerage statements. Dkt. No. 172 at 7. That speculation is not supported by any citation to the evidence, and it is inconsistent with Manavalan's interview statement that he reviewed the tax documents his clients provided to him. Ex. 96 at 23, 27, 37. The argument is also inconsistent with the requirement that the Court presume that the jury "drew all reasonable inferences in the prosecution's favor[.]" *Goyal*, 629 F.3d at 915. The Court thus defers to the jury's resolution rather than assuming that Manavalan—an experienced tax preparer—relied on summary figures alone.

In sum, the evidence was sufficient to allow the jury to conclude that Manavalan acted willfully as to both Counts 2 and 11.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES Manavalan's Motion for Judgment of Acquittal. Dkt. No. 171.

Dated this 6th day of July, 2026.

Lauren King
United States District Judge

ORDER DENYING MOTION FOR ACQUITTAL - 13